**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Mary Mae HARVEY, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Wallace CHASE, Defendant-Appellant.**

**Nos. 82–1298, 82–1321.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 12, 1982.

Decided March 15, 1983.

Rehearing and Rehearing En Banc Denied July 22, 1983.

David Taylor Shannon, Asst. Federal Public Defender, Phoenix, Ariz., for Harvey.

Thomas Schoppert, New Town, N.D., for Chase.

Robert Zimmerman, Asst. U.S. Atty., Billings, Mont., for plaintiff-appellee.

Before TRASK, ANDERSON, and CANBY, Circuit Judges.

**J. BLAINE ANDERSON, Circuit Judge:**

In this consolidated appeal, Harvey and Chase contest their convictions for involuntary manslaughter. Both convictions arose from alcohol-related highway accidents on Indian reservations. Each appeal presents the primary and common issue of whether the results of blood alcohol tests should have been suppressed when neither defendant was formally arrested at the time the blood samples were taken. We hold that Appellant Harvey should have been arrested by the authorities prior to the taking of the sample, and we therefore reverse. Appellant Chase, however, was so incapacitated as to obviate the need of a prior arrest and we affirm the judgment in his case.

## I. FACTS

### A. *Harvey*

On October 8, 1981, Mary Mae Harvey, a White Mountain Apache Indian, was driving a truck with a friend and the friend's daughter on the Fort Apache Reservation, about four miles outside McNary, Arizona. The truck crossed the center line and hit a van head-on, killing the driver of the van.

Ms. Harvey was taken to a hospital about an hour and a half after the accident. Investigator Garcia of the local Bureau of Indian Affairs (BIA) office, who had been at the scene of the accident, arrived at the hospital about two hours later. Without arresting Harvey, he requested her consent for a blood sample. She vehemently refused and one was taken over her objection. The blood sample was tested and it showed .19% alcohol. Harvey was not formally charged until February 17, 1982, at which time she was served with an indictment for involuntary manslaughter, 18 U.S.C. § 1112, under the Major Crimes Act, 18 U.S.C. § 1153.

Harvey's pretrial motion to suppress the blood alcohol evidence was denied. A trial commenced in April 1982, with the jury returning a verdict of guilty. Harvey was sentenced to two years' confinement.

### B. *Chase*

Wallace Chase is an enrolled member of the Three Affiliated Tribes of the Fort Berthold Reservation in North Dakota. In the early morning of May 1, 1981, Chase was driving a car on the Fort Peck Reservation in eastern Montana. The car struck a bridge abutment and the passenger of the car was killed. Chase was seriously injured, sustaining a broken hip and internal injuries. He was taken to a BIA hospital in Wolf Point. The state patrolman who had investigated the scene relayed a message through a dispatcher requesting another patrolman, John Frellick, to proceed to the hospital and take a blood sample from Chase. The condition of Chase at the time Patrolman Frellick requested the sample is in dispute. The trial court concluded that Chase was so delirious it was unnecessary for the officer to have arrested him prior to

having the treating doctor take the blood. The blood test showed an alcohol content of .21%.

Chase was indicted in September of 1981 for involuntary manslaughter. 18 U.S.C. §§ 1153, 1112. His motion to suppress the blood alcohol evidence was denied. The trial was held in April 1982 and the jury found him guilty. Chase's three-year sentence of imprisonment was suspended contingent on his meeting certain probation conditions.

## II. ISSUES

■ As indicated, the primary issue on appeal is whether evidence developed from a blood sample which was seized without consent, without a warrant, and without prior formal arrest should have been suppressed. Collateral questions that pertain to Chase's appeal involve whether Chase's incapacity made it unnecessary to formally arrest him prior to taking the blood sample, and whether Montana's implied consent statute has any force and effect on the Fort Peck Reservation.

Harvey also raises these other issues: Did the district court err by failing to instruct the jury that it need not unanimously decide on the manslaughter charge before it could deliberate on lesser included offenses? Did the district court improperly instruct the jury on the element of knowledge in an involuntary manslaughter charge? Were there instances of prosecutorial misconduct warranting a new trial?

Chase presents one additional issue: Should the district court have instructed the jury on the lesser included offense of careless driving?

## III. DISCUSSION

### A. Taking of the Blood Samples Without a Prior Arrest

Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), largely controls the resolution of this issue. In Schmerber, the Supreme Court held that a police officer who has validly arrested a suspect need not obtain a warrant in order to instruct medical personnel to draw a blood sample. The facts in Schmerber are similar to those in the cases before us: The defendant was involved in an automobile accident; the officer at the scene garnered indicia that the defendant was intoxicated; the officer proceeded to the hospital to take the defendant's blood sample; the officer requested the consent of the defendant to take the sample, which the defendant refused; and, the sample was taken over the defendant's objection.[1] 384 U.S. at 758–759, 768–769, 86 S.Ct. at 1829–1830, 1834–1835, 16 L.Ed.2d at 912–913, 918–919. The key difference between our cases and Schmerber is that neither Harvey nor Chase were placed under formal arrest prior to extracting the blood.

The importance of the fact the defendant was placed under arrest in Schmerber is seen in the Court's rationalization of the seizure of the blood as a search incident to an arrest in which an emergency—the evanescent nature of blood alcohol levels—made it highly impracticable to first secure a warrant. 384 U.S. at 770–771, 86 S.Ct. at 1835–1836, 16 L.Ed. at 920. The importance of the arrest is also seen in the following language:

It bears repeating, however, that we reach this judgment only on the facts of the present record. The integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the States minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions.

384 U.S. at 772, 86 S.Ct. at 1836, 16 L.Ed. at 920. We feel constrained to follow the lan-

---

1. These similarities to Schmerber are most readily apparent in Harvey. The facts are somewhat different in Chase. In Chase, the officer at the scene of the accident did not proceed to the hospital; instead he relayed a message directing another officer to take the sample. Also, there is some dispute over the condition of Chase at the hospital and whether he refused his consent to the drawing of the blood.

guage of the opinion. To hold that a formal prior arrest is not necessary would be to extend *Schmerber*'s applicability to different facts and conditions, a result the Court plainly did not intend.

Our "constraint" in requiring that a valid formal arrest is required prior to the taking of a blood sample is based on our recognition that the holding is somewhat formalistic. Professor LaFave makes a strong argument that the key element is *probable cause to arrest,* whether or not the intent to arrest is formally announced. 2 LaFave, *Search and Seizure,* § 5.4(b) (1978). *Cupp v. Murphy,* 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973), also creates some uncertainty in our minds. In *Murphy,* the Supreme Court upheld the warrantless taking of fingernail scrapings from a suspect even though the suspect had not been placed under formal arrest. The Court noted first that the Fourth Amendment protects against unreasonable seizures as well as arrests; it then focused on the existence of probable cause to seize and arrest Murphy. 412 U.S. at 294–295, 93 S.Ct. at 2003, 36 L.Ed.2d at 905. Seemingly equating Murphy's seizure with an arrest, the Court, as in *Schmerber,* rationalized the taking of fingernail scrapings as a limited and reasonable method to preserve evanescent evidence. 412 U.S. at 296, 93 S.Ct. at 2004, 36 L.Ed.2d at 906. Murphy was not arrested until a month later, a fact which convinced Justices Douglas and Brennan that the existence of probable cause to arrest the defendant was not so clear, making a remand appropriate. 412 U.S. at 301, 305, 93 S.Ct. at 2006, 2008, 36 L.Ed.2d at 909, 911. We do not, however, find *Murphy* controlling because it involved a much less intrusive search than the extraction of a blood sample. Also, we have found no cases which expand *Murphy* to the point of holding that a substantially contemporaneous formal arrest is not now required to support a search incident to arrest. Recently, the Supreme Court has cited *Murphy* in support of the following statement: "Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa." *Rawlings v. Kentucky,* 448 U.S. 98, 111, 100 S.Ct. 2556, 65 L.Ed.2d 633, 645–646 (1980). The law of this circuit goes no further. It upholds searches incident to an arrest prior to the actual arrest but requires that the arrest be substantially contemporaneous with the search. *Cipres v. United States,* 343 F.2d 95, 98 (9th Cir.1965), *cert. denied,* 385 U.S. 826, 87 S.Ct. 58, 17 L.Ed.2d 62 (1966); *United States v. Chatman,* 573 F.2d 565, 567 (9th Cir.1977). The arrests at issue here did not follow "quickly on the heels" of the search. The arrests, such as they were, did not occur until several months after the seizure of the blood and we are not yet persuaded to abandon the formal arrest requirement that is necessarily implied in *Schmerber* in favor of the probable cause to seize rule of *Murphy.*

Our decision is not without support. The one federal court that has addressed this issue has reached a similar conclusion. *Holland v. Parker,* 354 F.Supp. 196 (D.S.D.1973) (Three-judge court). Several state courts are in accord. See, e.g., *People v. Superior Court of Kern County,* 6 Cal.3d 757, 100 Cal.Rptr. 281, 493 P.2d 1145 (1972); *State v. Richerson,* 87 N.M. 437, 535 P.2d 644 (Ct. App.), *cert. denied,* 87 N.M. 450, 535 P.2d 657 (1975); *Layland v. State,* 535 P.2d 1043 (Alaska 1975) (See other cases cited at 1045). Some other states have held a prior arrest is not required. *Devaney v. State,* 259 Ind. 483, 288 N.E.2d 732 (1972); *State v. McMaster,* 118 N.J.Super. 476, 288 A.2d 583 (1972).

In *Harvey,* the United States argues that, even if a prior arrest is required, there was probable cause to arrest and the defendant was under the "functional equivalent" of an arrest at the time the blood sample was taken. The district court agreed. We do not dispute that Harvey was temporarily seized at the time the blood was removed. Also, it is evident there was probable cause for such a seizure. We do not agree, however, that it was then ipso facto proper to order the removal of blood. While it is true that the fact of arrest does not depend solely on the mere recital of words by the

police, *United States v. See,* 505 F.2d 845, 855 (9th Cir.1974), *cert. denied,* 420 U.S. 992, 95 S.Ct. 1428, 43 L.Ed.2d 673 (1975), there is no question that neither Harvey nor Chase were under any restraint that can realistically be characterized as an arrest. *See United States v. Bautista,* 684 F.2d 1286, 1289 (9th Cir.1982) (Even a complete restriction of liberty does not necessarily convert a stop into an arrest.)

Requiring an actual arrest prior to the removal of a blood sample will not place an undue burden on police. If placing a suspect under arrest is but a "silly formality," as the United States argues in *Harvey,* there is no reason why the police cannot take the time to engage in this ritual prior to taking the sample. Placing the suspect under arrest will help ensure that the police do not arbitrarily violate an individual's privacy. Also, it will sharply delineate the moment at which the police officer determined he or she had probable cause to arrest. In this respect, it will help prevent an after-the-fact justification of the seizure of the suspect and the blood. *See Layland v. State, supra,* 535 P.2d at 1049. Furthermore, the formal announcement of arrest triggers certain responsibilities for the arresting officer and gives rise to certain rights for the accused; for example, those rights delineated in a proper *Miranda* warning.

Our conclusion that an arrest must precede (or at least be substantially contemporaneous with) the seizure of blood from a suspect requires us to reverse the judgment in *Harvey.* The facts and justification for the seizure in *Chase* are somewhat different, however, necessitating some additional analysis.

In *Chase,* the district court held that Montana's implied consent law, Mont.Code Ann. § 61–8–402, controlled whether it was proper to admit the blood alcohol evidence. It based this holding on its belief the implied consent law did not infringe on the sovereignty of the tribes located on the Fort Peck Reservation. It also relied on 25 U.S.C. § 311 which permits the Secretary of the Interior to grant the states right-of-ways through reservations "in accordance with the laws of the state." Furthermore, the Montana Supreme Court has construed the Montana implied consent statute as not requiring the prior arrest of a person who is unconscious or otherwise incapable of refusing consent. *State v. Campbell,* 615 P.2d 190 (Mont.1980). Concluding Chase was incapable of rendering a response to the request for the blood sample, the district court denied the suppression motion. The court also allowed the jury to consider Montana's presumption of intoxication for blood alcohol levels over .10%.

We do not agree that Montana laws pertaining to traffic safety apply to Indians within the Fort Peck Reservation. 25 U.S.C. § 311 is not a general grant of jurisdiction to the states over the land constituting the right-of-way. 18 U.S.C. § 1151; *Ortiz-Barraza v. United States,* 512 F.2d 1176, 1180 (9th Cir.1975). The laws of the United States govern Major Crimes Act prosecutions. 18 U.S.C. § 1153; *see also* 18 U.S.C. § 3242. The Montana implied consent statute is not applicable to Indians on the reservation. We do not find, however, the district court to have committed reversible error. Although the district judge did not expressly reach the Fourth Amendment issue, we believe it sufficient that he found Chase so incapacitated that it was unnecessary for the patrolman to have effected an arrest prior to taking the blood sample. *See Breithaupt v. Abram,* 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957). That finding is sufficiently supported by the evidence.[2] Our conclusion that a prior formal arrest is necessary before taking a blood sample is not without exception. There is no compelling reason why a prior arrest is

---

2. Chase suffered severe injuries in the accident. The ambulance report indicated he was confused and disoriented. He was listed in critical condition on arrival at the hospital in the emergency room records. Patrolman Frellick spoke to Chase and requested his consent for taking the blood sample. Frellick received no verbal response. Although there was some evidence Chase physically resisted the blood sample, we do not find that evidence sufficient to show that Chase could have comprehended the significance of an arrest.

necessary when it is shown that the suspect could not appreciate the significance of such action. In this respect, the Montana rule comports with our interpretation of the Fourth Amendment.[3]

■ We recognize that whether a suspect is at the level of incapacity which makes it unnecessary to effect a prior arrest may not always be readily determinable by the police. We would recommend, then, the following procedure to aid that determination. First, and in all cases, the investigating officer should request the suspect's consent to take the blood sample. If the suspect's consent is freely given, that ends the matter. If, however, the suspect refuses consent, he or she should be placed under arrest prior to taking the blood sample. The arrest, as well as the removal of the blood, must be supported by probable cause. If the officer does not receive a refusal to the request, and considering the physical and mental condition of the suspect, it may be assumed that the suspect is not lucid. In that case, a formal arrest is not required, but, again, the seizure of the person and the blood must be supported by probable cause.

### B. Other Harvey Issues

■ Harvey also contends that the district court erred by failing to instruct the jury that it could consider lesser included offenses before it has unanimously decided in favor of the defendant on the manslaughter offense. The district court followed the instruction outlined in 1 Devitt and Blackmar, *Federal Jury Practice and Instructions,* § 18.05 (3d Ed.1977), which teaches that a jury should reach a unanimous result in favor of the defendant on the greater charge before moving to lesser ones. We see no error in the district court's instruction.

Harvey argues that this court should embrace the rule proposed in *United States v. Tsanas,* 572 F.2d 340 (2d Cir.), *cert. denied,*

435 U.S. 995, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978). In *Tsanas,* the court opined that a defendant has the right to make a seasonable selection between the Devitt and Blackmar instruction and one that allows the jury to move on to lesser offenses if it cannot, after reasonable efforts, decide on the major offense. 572 F.2d at 346. We do not need to decide whether the *Tsanas* rule should become the law in our circuit. Harvey did not make her request for this instruction until the jury had deliberated for three hours and been dismissed for the weekend. As held in *Tsanas,* the request for this alternate instruction must be timely. *Id.* at 347. The *Tsanas* rule is not of constitutional dimension, and the district court's instruction following Devitt and Blackmar is not error. *Id.; Catches v. United States,* 582 F.2d 453, 459 (8th Cir. 1978).

■ Harvey also argues that the district court erred because it did not use the exact language of *United States v. Keith,* 605 F.2d 462, 463 (9th Cir.1979), in its instruction on the knowledge element of involuntary manslaughter. We see *no error.* While the trial judge's instruction did not mirror the language in *Keith,* its effect was the same. We fail to see how the instruction as used lowered the level of knowledge required for involuntary manslaughter.

■ Harvey's final contention is that prosecutorial misconduct tainted her conviction. We hold that the misconduct was cured by the trial judge's timely cautionary instruction to the jury, *United States v. Berry,* 627 F.2d 193, 200 (9th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 843 (1981), but we emphasize that a prosecutor may not expound in closing argument on what a witness would have testified to if questioned.

### C. Failure to Instruct on the Lesser Included Offense in Chase

■ Chase asserts that the district court erred by not giving a lesser included

---

**3.** We also note that the instruction to the jury on Montana's presumption of intoxication for alcohol levels over .10% was improper but the error was not reversible. A qualified person testified regarding the effect of various levels of blood alcohol content on an individual, including the effect of Chase's .21% level. We find that testimony cured the technical error of instructing the jury on Montana law.

offense instruction on careless driving. A defendant is entitled to a lesser included offense instruction if: (1) the lesser included offense is identified within the offense charged; and (2) a rational jury could find the defendant guilty of the lesser offense but not the greater. *United States v. Johnson,* 637 F.2d 1224, 1233–1234 (9th Cir.1980); *United States v. Muniz,* 684 F.2d 634, 636 (9th Cir.1982). In considering the second factor, the focus must be on the evidence adduced at trial. *Id.* The United States concedes that the first element is met—careless driving is a lesser included offense of vehicular involuntary manslaughter. *United States v. Pino,* 606 F.2d 908, 917 (10th Cir.1979). The district court apparently believed, however, that the evidence produced at trial was not such that a reasonable jury could find Chase guilty of careless driving but not involuntary manslaughter. Reporter's Transcript at 131. We agree. Chase did not offer any witnesses in response to the government's case. His primary defense was to attempt to exclude the blood-alcohol evidence. The government's case focused primarily on the fact of intoxication. The evidence offered at trial simply did not go to prove Chase acted in anything less than a grossly negligent manner; the jury could not reasonably have convicted him of careless driving. *Cf. Pino, supra,* 606 F.2d at 917 (Evidence supported instruction on lesser included offense of careless driving when the defendant, in response to government's charge of involuntary manslaughter based on intoxication, offered the testimony of himself and several others that disputed the fact of drunkenness and reckless driving.)

## IV. CONCLUSION

█ We hold that, unless a suspect is unconscious or so incapacitated as to be unable to appreciate the significance of an arrest, the Fourth Amendment requires the police to validly and formally arrest the suspect prior to ordering the removal of a blood sample. In Harvey's appeal, there was no error in failing to give the *Tsanas* instruction or in the involuntary manslaughter instruction. Nor was the prose-

cutorial misconduct sufficient for reversal. Based on the evidence, Chase was not entitled to a lesser included offense instruction.

The decision of the district court in *Harvey* is REVERSED.

The decision of the district court in *Chase* is AFFIRMED.