**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Daniel G. CHAPEL, Defendant–Appellant.**

**No. 93–30236.**

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 1, 1994 *.

Decided Sept. 8, 1994.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

David M. Ortley, Kalispell, MT, for defendant-appellant.

Dennis Hester, Kalispell, MT, for plaintiff-appellee.

Before: WRIGHT, KOZINSKI and FERNANDEZ, Circuit Judges.

Per Curiam; concurrence by Judge KOZINSKI.

PER CURIAM.

Daniel Chapel was severely injured in a single-vehicle motorcycle accident in a remote part of Glacier National Park. Several park rangers and a park medic came to his assistance. The rangers administered first aid and the medic radioed a helicopter to evacuate Chapel to the regional hospital. The medic also prepared an I.V. as a routine life support measure.

While administering first aid, the rangers noticed telltale signs that Chapel had been drinking: his breath smelled of alcohol, his speech was slurred, his eyes were bloodshot. The rangers sought to gather hard evidence of Chapel's intoxication. They first asked Chapel to take a breathalyzer test, but he refused. Knowing that Chapel's blood alcohol content ("BAC") would dissipate, the rangers instructed the medic to obtain a blood sample for later testing. The medic, who had already inserted a sterile needle into Chapel's arm to administer the I.V., withdrew a small sample of Chapel's blood.

The rangers' suspicions turned out to be only too well-founded. The Montana Forensic Science Lab examined Chapel's blood sample and determined that he had a BAC of 0.21 grams of alcohol per 100 milliliters of blood; in other words, he was crapulent. Based largely on this evidence, Chapel was convicted of drunk driving under 36 C.F.R. § 4.23(a)(2). Chapel now appeals, arguing that the blood sample was seized in violation of *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and *United States v. Harvey,* 701 F.2d 800 (9th Cir. 1983).

He's right. The fourth amendment permits the nonconsensual seizure of blood to test for alcohol content, but only in certain circumstances. First, an officer ordering that a blood sample be taken must reasonably believe he is "confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threaten[s] 'the destruction of evidence.'" *Schmerber,* 384 U.S. at 770, 86 S.Ct. at 1835 (quoting *Preston v. United States,* 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964)). Second, the officer must have probable cause to believe the suspect has been driving under the influence of alcohol. *Id.* Third, the procedures used to extract the blood must be reasonable; that is, the sample must be taken by trained medical personnel in accordance with accepted practices. *Id.* at 771, 86 S.Ct. at 1836. And fourth, the officer must arrest the suspect before, or soon after, taking the sample. *Harvey,* 701 F.2d at 804. This last requirement, added by our opinion in *Harvey,* may be excused if the suspect is unconscious or otherwise unable to appreciate the significance of arrest. *Id.* at 807.

Chapel was never arrested, and he understood only too well what was going on, as he vigorously protested the seizure of his blood. Though the rangers could easily have arrested Chapel, given the external evidence of intoxication, they did not do so. The rangers thus stumbled over the fourth of the *Schmerber–Harvey* requirements.

The government protests that the rangers' conduct was nonetheless reasonable because all the other *Schmerber* requirements for taking a blood sample were easily met. Chapel's slurred speech, bloodshot eyes and alcohol-laden breath gave the rangers ample

cause to suspect that Chapel had been driving while intoxicated. The medic was licensed under National Park Service regulations to withdraw blood, and did so as safely and nonintrusively as such things can be done; indeed, given that a vein had already been opened for purposes of administering first aid, the additional intrusion from the extrusion of a single syringe-full of blood was almost trivial. And there were exigent circumstances galore: Chapel refused to submit to a breathalyzer test, and the rangers had no other means of preserving evidence of Chapel's BAC, as Chapel was too injured to walk a straight line or perform the calisthenics associated with other nonintrusive sobriety tests.

All this is beside the point. The failure to arrest was the only factual distinction between *Harvey* and *Schmerber*, but failure to arrest alone was enough in *Harvey* to render the seizure of a blood sample unreasonable. *Harvey*, 701 F.2d at 803–04. Though the rangers' conduct in seizing Chapel's blood was entirely reasonable, Chapel was never formally arrested. We must therefore conclude that the blood sample was seized in violation of the fourth amendment. The evidence of Chapel's BAC, which was derived from this blood sample, should have been suppressed. Nor can we conclude that admission of this key evidence was harmless.

**REVERSED.**

KOZINSKI, Circuit Judge, concurring.

Eleven years ago, Judge Kennedy had the following to say about *Harvey:*

> If the exclusionary rule becomes an end in itself and the courts do not apply it in a sensible and predictable way, then one approach is to reexamine it altogether. We do not have that authority, but we do have the commission, and the obligation, to confine the rule to the purposes for which it was announced.
>
> In this case, the exclusionary rule seems to have acquired such independent force that it operates without reference to any improper conduct by the police. The rule is torn from its pragmatic mooring, for a premise of the decision is that the officer acted not only in good faith but also with

probable cause under exigent circumstances. Blood was drawn at once because the alcohol it probably contained would have disappeared during the wait for a warrant. In this respect, the officer acted in fulfillment of his duty, not in breach of it, by taking the blood sample when he did.

> The exclusionary rule, nevertheless, is invoked because an arrest was not made contemporaneously with the lawful search. No convincing argument is made that any rights or interests of the defendant were sacrificed by the delay. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), did recite that an arrest had been made coincidentally with taking a blood sample, but in my view this was simply a way of stating that there existed the probable cause that is always the prerequisite for the seizure of evidence in exigent circumstances. *Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973), seems to me to have established the proposition that an arrest is not a precondition for a search under exigent circumstances, even though the search is intrusive in character.

*United States v. Harvey*, 711 F.2d 144, 144–45 (9th Cir.1983) (Kennedy, J., dissenting from denial of rehearing en banc). His observations are only more apt today in light of *Winston v. Lee*, 470 U.S. 753, 759, 105 S.Ct. 1611, 1616, 84 L.Ed.2d 662 (1985), where the Court remarked that *Schmerber* "fell within the exigent-circumstances exception to the warrant requirement."

We should have taken *Harvey* en banc in 1983. It's not too late.