**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Daniel G. CHAPEL, Defendant– Appellant.**

**No. 93–30236.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 23, 1995.

Decided May 26, 1995.

sual taking of a sample of the suspect's blood without a warrant. In the case we review, a three-judge panel reversed Daniel Chapel's conviction for drunken driving in violation of 36 C.F.R. § 4.23(a)(2), after concluding that park rangers violated his Fourth Amendment rights when they seized a blood sample later used in evidence against him. *United States v. Chapel,* 34 F.3d 893 (9th Cir.1994). The panel recognized that, under *Harvey,* the failure of the rangers to arrest Chapel before or shortly after obtaining the blood sample rendered the seizure unreasonable. *Id.* at 894.

Having considered the question anew, we conclude that the Fourth Amendment does not require the arrest of a suspect in order for law enforcement officers to cause the taking of a sample of the suspect's blood without consent or a warrant. We therefore overrule *Harvey.* We vacate the panel's decision and remand the case to the panel for a determination whether probable cause existed to support the taking of Chapel's blood.

## BACKGROUND

We adopt the statement of facts set forth by the panel, 34 F.3d at 893:

Daniel Chapel was severely injured in a single-vehicle motorcycle accident in a remote part of Glacier National Park. Several park rangers and a park medic came to his assistance. The rangers administered first aid and the medic radioed a helicopter to evacuate Chapel to the regional hospital. The medic also prepared an I.V. as a routine life-support measure.

While administering first aid, the rangers noticed telltale signs that Chapel had been drinking: his breath smelled of alcohol, his speech was slurred, his eyes were bloodshot. The rangers sought to gather hard evidence of Chapel's intoxication. They first asked Chapel to take a breathalizer test, but he refused. Knowing that Chapel's blood alcohol content ("BAC") would dissipate, the rangers instructed the medic to obtain a blood sample for later testing. The medic, who had already inserted a sterile needle into Chapel's arm to administer the I.V., withdrew a small sample of Chapel's blood.

Larry Kupers, Deputy Federal Public Defender, San Francisco, CA, and David M. Ortley, Kalispell, MT, for defendant-appellant.

Joseph Douglas Wilson, U.S. Dept. of Justice, Washington, DC, for plaintiff-appellee.

Before: WALLACE, Chief Judge, BROWNING, HUG, SCHROEDER, FLETCHER, PREGERSON, CANBY, REINHARDT, THOMPSON, O'SCANNLAIN and LEAVY, Circuit Judges.

CANBY, Circuit Judge:

We granted en banc review of this case to consider whether to overrule our decision in *United States v. Harvey,* 701 F.2d 800, 803–04 (9th Cir.1983), which held that the Fourth Amendment requires that authorities arrest a suspect prior to a non-consen-

The rangers' suspicions turned out to be only too well founded. The Montana Forensic Science Lab examined Chapel's blood sample and determined that he had a BAC of 0.21 grams of alcohol per 100 milliliters of blood; in other words, he was crapulent. Based largely on this evidence, Chapel was convicted of drunk driving under 36 C.F.R. § 4.23(a)(2)

. . . .

In considering Chapel's appeal, the panel reviewed the circumstances under which the Fourth Amendment would permit the nonconsensual seizure of blood, without a warrant, to test for alcohol content. The panel first recounted the three requirements derived from *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966):

> First, an officer ordering that a blood sample be taken must reasonably believe he is "confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threaten[s] 'the destruction of evidence.'" Second, the officer must have probable cause to believe the suspect has been driving under the influence of alcohol. Third, the procedures used to extract the blood must be reasonable; that is, the sample must be taken by trained medical personnel in accordance with accepted practices.

*Chapel*, 34 F.3d at 894 (internal citations omitted).

The panel also recited a fourth requirement, subsequently imposed by *Harvey*, that "the officer must arrest the suspect before, or soon after, taking the sample." *Id.* (citing *Harvey*, 701 F.2d at 804).[1]

The panel observed that the officers had met the three requirements of *Schmerber*, but had failed to make an arrest as required by *Harvey*. The panel thus concluded that "[al]though the rangers' conduct in seizing Chapel's blood was entirely reasonable," their failure to arrest Chapel rendered their seizure of his blood sample unconstitutional under *Harvey*. *Chapel*, 34 F.3d at 895. The panel therefore held that the evidence should have been suppressed, and accordingly reversed Chapel's conviction.

## DISCUSSION

The panel correctly recognized that the rule of *Harvey*, requiring that police formally arrest a suspect prior to ordering removal of a blood sample, controlled its decision in the present case. We now reexamine *Harvey* to determine whether its constitutional ruling retains vitality. We conclude that it does not.

We start with the proposition that courts and juries should not be denied probative evidence unless it was procured in violation of the rights of the accused. In the situation posed by this case as well as by *Harvey*, it is difficult to see what rights of the accused were violated by their not having been arrested at the time the blood was extracted. Why, then, did *Harvey* impose a requirement of arrest? The opinion in *Harvey* made clear that its ruling was based on its interpretation of *Schmerber*. The central reason why *Schmerber* permitted the non-consensual taking of blood without a warrant, according to *Harvey*, was that the taking was part of a search incident to arrest. *Harvey*, 701 F.2d at 803. Without the arrest, there was no constitutional justification for the search in the absence of a warrant. *See id.* at 803–04. Even in so concluding, *Harvey* allowed that its holding was "somewhat formalistic," and acknowledged the scholarly criticism that "the key element [in cases of involuntary blood samples] is *probable cause to arrest*, whether or not the intent to arrest is formally announced." *Id.* at 804 (citations omitted). Nonetheless, *Harvey* felt "constrained" to follow its reading of *Schmerber*. *Id.* at 803–04.

 We now know from the Supreme Court's reasoning in a case decided after *Harvey* that the seizure of blood in *Schmerber* "fell within the exigent-circumstances exception to the warrant requirement." *Winston v. Lee*, 470 U.S. 753, 759, 105 S.Ct. 1611,

---

1. *Harvey* noted an exception to the arrest requirement if the suspect was "unconscious or otherwise so incapacitated as to be unable to appreciate the significance of an arrest." *Har-*vey, 701 F.2d at 807. Chapel was neither unconscious nor so incapacitated. *Chapel*, 34 F.3d at 894.

1616, 84 L.Ed.2d 662 (1985).[2] Seizures of evidence based on exigent circumstances do not, of course, have to be accompanied by an arrest. *See Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1983) (scraping of suspect's fingernail to preserve evidence upheld; suspect arrested one month later). Accordingly, an arrest is not essential to support the intrusion in the absence of a warrant, so long as the three explicit *Schmerber* requirements are met.[3] Thus, the interpretation of *Schmerber* that formed the basis for our decision in *Harvey*, although plausible at the time, is no longer sustainable in light of *Winston*. *Harvey*'s arrest requirement therefore cannot stand.

■ The result we reach today does no violence to the Fourth Amendment or the protections it affords to those suspected of crime. Before a law enforcement officer may lawfully take a blood sample without consent or a warrant, he or she must have probable cause to believe that the suspect has committed an offense of which the current state of one's blood will constitute evidence. *Schmerber*, 384 U.S. at 770, 86 S.Ct. at 1835. The requirement of a contemporaneous arrest adds nothing to that constitutional protection; the probable cause threshold in these circumstances remains the same. *See Berry*, 866 F.2d at 891 (6th Cir.1989) (the facts in *Schmerber* "creating probable cause for arrest also established that the results of the blood test would prove positive"). There is nothing about an arrest that aids the suspect.

In addition to probable cause, the other *Schmerber* requirements remain in place. The officer must still reasonably believe that an emergency exists in which the delay necessary to obtain a warrant would threaten the loss or destruction of evidence. The procedures used to extract the sample must still be reasonable and in accordance with accepted medical practices. *See Schmerber*, 384 U.S. at 770–72, 86 S.Ct. at 1835–37. Our ruling does nothing to the detriment of the accused.

■ There is one subsidiary point to be addressed. Chapel contends that the taking of his blood without an arrest violated the federal "implied consent" statute, 18 U.S.C. § 3118. Section 3118 provides, in pertinent part:

(a) **Consent.**—Whoever operates a motor vehicle in the ... territorial jurisdiction of the United States consents thereby to a chemical test ... of such person's blood, breath, or urine, *if arrested* for any offense arising from such person's driving under the influence of a drug or alcohol....

(b) **Effect of refusal.**—Whoever, having consented to tests ... by reason of subsection (a), refuses to submit to such a test ..., after having first been advised of the consequences of such a refusal, shall be denied the privilege of operating a motor vehicle [within the] territorial jurisdiction of the United States [for] the period of a year ..., and such refusal may be admitted into evidence....

(Emphasis added).

The short answer to Chapel's contention is that section 3118, by its own terms, applies to the suspect only "if arrested." Chapel was not arrested, and the statute was not triggered.

Chapel argues, however, that the statute is meaningless if it is not construed to imply the requirement of an arrest prior to a test for which there is no express consent. We do not think so. Although it is true that *Schmerber*, as we now construe it, obviates the necessity of an implied consent both before and after arrest, this fact does not deprive the statute of meaning or effect. The two subsections must be read together. Subsection (a) implies a consent to testing in the event of an arrest, and subsection (b) provides that drivers who have so consented and refused a test, after having been advised of the consequences, may lose their driving privileges and may have the refusal used

---

**2.** The Sixth Circuit reached a similar conclusion in *United States v. Berry*, 866 F.2d 887, 891 (6th Cir.1989).

**3.** A case meeting the three *Schmerber* requirements necessarily falls within the exigent circum-

stances exception to the Fourth Amendment; establishment of exigent circumstances is the first *Schmerber* requirement. *See Schmerber*, 384 U.S. at 770–71, 86 S.Ct. at 1835–36; *Chapel*, 34 F.3d at 894.

against them in court. Officers may decide to test without an arrest, under *Schmerber*, or, if they prefer not to cause the forcible extraction of a sample, may make an arrest and rely on the alternative sanctions subsection (b) provides. The statute has not become useless or nonsensical. There is accordingly no occasion for us to consider whether heroic measures of construction are necessary or appropriate to save the statute. As written, section 3118 applies "if" the suspect is arrested, and there we leave it.[4]

We therefore conclude that no statutory bar stands in the way of our decision. We accordingly overrule *Harvey*, and hold that an arrest is not a constitutional prerequisite for the non-consensual taking of Chapel's blood without a warrant. We vacate the panel's decision, and remand to the panel for a determination whether probable cause existed to support the taking of blood from Chapel, and for further disposition consistent with this opinion.

**VACATED and REMANDED.**

---

4. Our disposition of this question makes it unnecessary for us to decide whether evidence obtained in violation of section 3118 is inadmissible.