STATE of Missouri, Appellant,

v.

Tyler G. McNEELY, Respondent.

No. SC 91850.

Supreme Court of Missouri, En Banc.

Jan. 17, 2012.

Rehearing Denied March 6, 2012.

John N. Koester Jr., Cape Girardeau County Prosecuting Attorney's Office, Cape Girardeau, for State.

Stephen C. Wilson, Wilson & Mann LC, Cape Girardeau, for McNeely.

Stephen D. Bonney, Kansas City, for amicus curiae American Civil Liberties Union of Eastern Missouri and American Civil Liberties Union of Western Missouri.

Talmage E. Newton IV, St. Louis, for amicus curiae Missouri Association of Criminal Defense Lawyers.

James B. Farnsworth, Jefferson City, for amicus curiae Attorney General's Office.

PER CURIAM.

Tyler McNeely (Defendant) refused to consent to an alcohol breath test or a blood test after he was arrested for driving while intoxicated. The arresting patrolman, without seeking a warrant from a judge, ordered a medical professional to draw Defendant's blood. The trial court sustained Defendant's motion to suppress the results of the blood test as the nonconsensual and warrantless blood draw was a violation of his Fourth Amendment rights.

The issue before the Court in this interlocutory appeal is: Under what "special facts" is a nonconsensual and warrantless blood draw in a DWI case a reasonable search and seizure under the Fourth Amendment?

This Court recognizes the two competing interests involved in answering that question, namely, society's interest in preventing the harms caused by drunken driving and an individual's Fourth Amendment right to be secure in his or her person and to be free of unreasonable searches and seizures.

The United States Supreme Court addressed this issue in the landmark case of *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). There, the Supreme Court provided a limited exception to the warrant requirement for the taking of a blood sample in alcohol-related arrests. *Id.* at 772, 86 S.Ct. 1826. The holding, which was expressly limited to the facts of that case, ultimately rested on certain "special facts" that might have led the officer to reasonably believe he was faced with an emergency situation in which the delay in obtaining a warrant would threaten the destruction of evidence. *Id.* at 770–71, 86 S.Ct. 1826. The threat of evidence destruction was caused by the fact that the percentage of alcohol in a person's blood begins to diminish shortly after drinking stops and because time had to be taken both to investigate the accident scene and transport the defendant to the hospital. *Id.* These events left no time for the officer to seek out a judge to secure a search warrant. *Id. Schmerber* held that these "special facts" permitted a warrantless blood draw. *Id.* at 771, 86 S.Ct. 1826.

■ The patrolman here, however, was not faced with the "special facts" of *Schmerber*. Because there was no accident to investigate and there was no need to arrange for the medical treatment of any occupants, there was no delay that would threaten the destruction of evidence before a warrant could be obtained. Additionally, there was no evidence here that the patrolman would have been unable to obtain a warrant had he attempted to do so. The sole special fact present in this case, that blood-alcohol levels dissipate after drinking ceases, is not a *per se* exigency pursuant to *Schmerber* justifying an officer to order a blood test without obtaining a warrant from a neutral judge.

The judgment of the trial court is affirmed.[1]

## I. Facts

A Missouri state highway patrolman, while performing his patrol, stopped Defendant's truck for speeding at 2:08 a.m. As the patrolman spoke with Defendant during the routine traffic stop, he noticed

---

1. Affirming the trial court's decision granting the motion to suppress does not result in the dismissal of the case against Defendant. Instead, the state may proceed in the prosecution of the DWI charge against Defendant based on other evidence not gathered in violation of the Constitution.

that Defendant displayed the tell-tale signs of intoxication—bloodshot eyes, slurred speech, and the smell of alcohol on his breath. These observations changed the nature of the patrolman's investigation from a routine traffic stop to a DWI investigation. He asked Defendant to step out of the vehicle and to perform standard field-sobriety tests. Defendant performed the tests poorly, and the patrolman placed Defendant under arrest for driving while intoxicated. After securing Defendant in the patrol car, the patrolman asked him if he would consent to a breath test. Defendant refused.

The patrolman testified that, in his more than 17 years of experience, he had obtained warrants when he needed to test the blood of DWI suspects. This time, however, he was influenced by an article he previously had read, written by a traffic safety resource prosecutor, in "Traffic Safety News." He testified that the article asserted officers no longer needed to obtain a warrant before requiring DWI suspects to submit to nonconsensual blood tests because of recent changes in Missouri's implied consent law.[2] Based on this understanding, the patrolman did not seek a warrant and drove Defendant to the local hospital to test his blood to secure evidence of his intoxication. There, Defendant refused to consent to a blood draw. Over Defendant's refusal, the patrolman directed a phlebotomist to draw Defendant's blood for alcohol testing at 2:33 a.m. The blood sample was analyzed, and the results revealed that Defendant's blood-alcohol content was well above the legal limit.

Defendant moved to suppress the results of the blood test as a violation of his Fourth Amendment rights. The trial court sustained the motion. The State brings this interlocutory appeal.[3]

## II. Standard of Review

A trial court's ruling on a motion to suppress will be reversed only if it is clearly erroneous. *State v. Sund,* 215 S.W.3d 719, 723 (Mo. banc 2007). This Court defers to the trial court's factual findings and credibility determinations and considers all evidence and reasonable inferences in the light most favorable to the trial court's ruling. *Id.* Whether conduct violates the Fourth Amendment is a question of law, which is reviewed *de novo. Id.*

## III. Analysis

The issue before this Court is whether the natural dissipation of blood-alcohol evidence is alone a sufficient exigency to dispense with the warrant requirement under the Fourth Amendment.

The Fourth Amendment to the United States Constitution ensures "[t]he right of the people to be secure in their person ... against unreasonable searches and seizures." The United States Supreme Court has repeatedly held that "searches conducted outside the judicial process, without

2. The article, *Warrantless Blood Draws: Are They Now Authorized in Missouri?*, acknowledged that the former version of section 577.041.1 stated that if a person refused both the breath-analyzer and the blood draw test, then "none shall be given." Section 577.041.1, RSMo Supp.2008. However, that section was amended prior to Defendant's arrest by the deletion of the phrase "and none shall be given." Section 577.041.1, RSMo Supp.2010. With the removal of that phrase, the prosecutor asserted that police officers now may "rely on the well settled principle that obtaining blood from an arrestee on probable cause without a warrant and without actual consent does not offend constitutional guarantees." The prosecutor's assertion rests on a fundamental misreading of *Schmerber.*

3. This Court has jurisdiction pursuant to article V, section 10 of the Missouri Constitution.

prior approval by judge or magistrate are *per se* unreasonable under the Fourth Amendment—subject to only a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

■ An exception to the general rule requiring a search warrant is when exigent circumstances are present. *United States v. Cisneros–Gutierrez,* 598 F.3d 997, 1004 (8th Cir.2010). Exigent circumstances exist if the time needed to obtain a warrant would endanger life, allow a suspect to escape, or risk the destruction of evidence. *Id.*

■ Every Fourth Amendment analysis requires the balancing of two competing interests: (1) the right of the individual to be secure in his or her person, house, papers, and effects against unreasonable searches and seizures and (2) society's interest in discovering and eliminating criminal activity. *Schmerber* recognized this essential and inevitable struggle of the Fourth Amendment:

> Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned. The requirement that a warrant be obtained is a requirement that the inferences to support the search "be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." The importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great.

384 U.S. at 770, 86 S.Ct. 1826 (quoting *Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 92 L.Ed. 436 (1948)) (internal citations omitted).

*A. Schmerber v. California*

*Schmerber* provides the backdrop to this Court's analysis in the case at hand. In *Schmerber,* the defendant was driving a vehicle that skidded off the road. *Id.* at 758 n. 2, 86 S.Ct. 1826. He and his passenger were injured and taken to the hospital for treatment. *Id.* At the hospital, the defendant was arrested and, without his consent or a warrant, an officer directed a physician to take a sample of the defendant's blood. *Id.* at 758, 86 S.Ct. 1826. Analysis of the blood sample revealed that the defendant was intoxicated. *Id.* at 759, 86 S.Ct. 1826. The defendant objected to the trial court's receipt of the blood sample evidence, contending that the warrantless blood draw violated his Fourth Amendment right to be free from unreasonable searches and seizures. *Id.*

The Supreme Court reasoned that drawing an individual's blood for evidentiary purposes is a search that implicates the Fourth Amendment. *Id.* at 769–70, 86 S.Ct. 1826. Ordinarily a search warrant would be required to perform a blood draw when a person does not consent. *Id.* at 770, 86 S.Ct. 1826. The circumstances in *Schmerber,* however, led the Supreme Court to carve out a very limited exception to the warrant requirement for a blood draw in alcohol-related cases. *Id.* at 772, 86 S.Ct. 1826. The limited exception of *Schmerber* ultimately rested on certain "special facts" that might have caused the officer to reasonably believe he was faced with an emergency situation in which the delay in obtaining a warrant would threaten the destruction of evidence. *Id.* at 770–71, 86 S.Ct. 1826. The threat of evidence destruction was caused by the fact that the percentage of alcohol in a person's blood begins to diminish shortly after drinking stops and because there was an accident requiring time to be taken to both trans-

port the defendant to the hospital and to investigate the scene of the accident. *Id.* Given those "special facts" the Supreme Court concluded that the warrantless search was valid incident to the defendant's arrest. *Id.* at 771, 86 S.Ct. 1826. Although *Schmerber* couched its limited exception to the warrant requirement in terms of a search incident to arrest, it has since been read as an application of the exigent circumstances exception to the warrant requirement. *United States v. Berry*, 866 F.2d 887, 891 (6th Cir.1989).

The State urges that *Schmerber* gives officers the broad authority to direct medical professionals to conduct warrantless and nonconsensual blood draws on DWI defendants on mere probable cause of intoxication. The State asserts that the dissipating nature of blood-alcohol evidence alone constitutes a sufficient exigency to dispense with the warrant requirement in alcohol-related cases.

*Schmerber,* however, requires more than the mere fact that alcohol naturally dissipates in the blood stream. Instead, it requires a showing of "special facts" to provide an exigency to conduct a warrantless bodily intrusion. *Schmerber,* 384 U.S. at 770–71, 86 S.Ct. 1826. The "special facts" present in *Schmerber* included the time delay created by the investigation of the accident as well as the transportation of the defendant to the hospital. *Id.* These "special facts" might have caused the officer to reasonably believe he was faced with an emergency situation in which the further delay in obtaining a warrant would threaten the destruction of evidence. *Id.* Under this limited fact situation, *Schmerber* held a nonconsensual, warrantless blood draw was permissible under the Fourth Amendment. *Id.* at 772, 86 S.Ct. 1826. This interpretation of *Schmerber* is supported by other jurisdictions that have addressed this issue.

**B. Other Jurisdictions That Have Addressed** Schmerber *Have Held That "Special Facts" Beyond the Natural Dissipation of Blood–Alcohol Are Required*

Since *Schmerber,* several courts have addressed whether *Schmerber*'s holding allows for nonconsensual, warrantless blood draws in routine DWI cases. The Supreme Court of Utah held that the dissipating nature of blood-alcohol evidence alone is not a *per se* exigency justifying a warrantless search. *State v. Rodriguez,* 156 P.3d 771, 772 (Utah 2007). In *Rodriguez,* the defendant was critically injured in a serious automobile accident and was rushed to the hospital. *Id.* An officer went to the hospital where the defendant was being treated and observed the odor of alcohol on her breath, slurred speech, red eyes, and belligerent behavior. *Id.* Blood was drawn from the defendant through an IV line that the hospital staff had previously inserted in her arm. *Id.* The analysis of her blood revealed that her blood-alcohol level was five times the legal limit in Utah. *Id.* At trial, the defendant moved to suppress the evidence obtained from the warrantless blood draw. *Id.*

*Rodriguez,* in analyzing *Schmerber,* stated: "The evanescence of blood-alcohol was never special enough to create an exigent circumstance by itself." *Id.* at 776. Instead, the Utah court reasoned, *Schmerber*'s exigent circumstances exception to the warrant requirement rested on all of the "special facts" of *Schmerber,* and the natural dissipation of blood-alcohol was only one of those "special facts." *Id. Rodriguez* adopted a totality of the circumstances test for the determination of whether there exists a sufficient exigency justifying a warrantless blood draw. *Id.* at 782. *Rodriguez* reasoned that the seriousness of the accident in the case, coupled

with the compelling evidence of the defendant's alcohol impairment, was "sufficient to establish that the interests of law enforcement outweighed, in this instance, [the defendant's] privacy interests." *Id.* at 781. The Supreme Court of Utah held that, given the totality of the circumstances, probable cause and exigent circumstances justified a warrantless blood draw in the case before it. *Id.* at 782.

Similarly, the Supreme Court of Iowa noted that *Schmerber* rejected the notion that the natural dissipation of blood-alcohol constituted a *per se* exigency justifying a warrantless blood draw. *State v. Johnson,* 744 N.W.2d 340, 344 (Iowa 2008). In *Johnson,* the defendant was involved in a car accident that caused serious injury to the driver of another car. *Id.* at 341. After the accident, the defendant fled the scene on foot, but the police tracked him down not far from the scene. *Id.* He was arrested and taken to the police station, where he refused a breath test. *Id.* Subsequently, he was taken to the hospital, and a blood sample was drawn without a warrant and without his consent. *Id.* Analysis of his blood revealed that his blood-alcohol concentration was well above the legal limit in Iowa. *Id.* The defendant moved to suppress the results of the blood test. *Id.*

*Johnson* analyzed the admissibility of a warrantless blood draw performed in accordance with an Iowa statute authorizing such draws. *Id.*[4] The defendant argued that the officer was not faced with an "emergency" under the Iowa statute. *Id.* The Iowa court found that there were

*Schmerber*-like time-based considerations present in the case before it because the officer had to take time to investigate the scene, track down the fleeing defendant, administer sobriety tests, and transport him to the police station and hospital. *Id.* at 344. Two and a half hours after the accident, officers were finally able to draw the defendant's blood. *Id. Johnson* held that the warrantless blood draw was permissible because the officer, in investigating a serious injury accident, "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence." *Id.* at 342–43 (quoting *Schmerber,* 384 U.S. at 770, 86 S.Ct. 1826). The Supreme Court of Iowa rejected the idea that *Schmerber* created a *per se* exigency based on the nature of blood-alcohol alone. *Id.* at 344. Instead, it noted that "there was more underlying the seizure of blood in *Schmerber* than the mere phenomenon of alcohol dissipation." *Id.*

Finally, the Ninth Circuit held that an arrest is not a constitutional prerequisite to a warrantless blood draw in *United States v. Chapel,* 55 F.3d 1416, 1420 (9th Cir.1995). In so holding, the court discussed the constitutionality of nonconsensual, warrantless blood draws. It reasoned that although a nonconsensual, warrantless blood draw may be based upon probable cause instead of requiring an arrest, *Schmerber* requires more:

> In addition to probable cause, the other *Schmerber* requirements remain in

4. The Iowa statute in question closely tracked the rationales of *Schmerber,* allowing a nonconsensual, warrantless blood draw when the operator of a motor vehicle is arrested for an "accident that causes a death or personal injury reasonably likely to cause death" when three additional elements are present: (1) the officer reasonably believes the blood drawn will produce evidence of intoxication; (2) the blood is drawn by a medical personnel; and (3) the officer reasonably believes that he or she is confronted with an emergency situation in which the delay necessary to obtain a warrant threatens the destruction of the evidence. *Id.* at 342 (quoting Iowa Code section 321J.9 (2005)).

place. The officer must still reasonably believe that an emergency exists in which the delay necessary to obtain a warrant would threaten the loss or destruction of evidence. The procedures used to extract the sample must still be reasonable and in accordance with accepted medical practices.

*Id.* at 1419.

*Chapel*'s interpretation of *Schmerber* is consistent with this Court's holding today. The DWI defendant in *Chapel* had been severely injured in a motorcycle accident; therefore, the officer was faced with an emergency situation that—taken with the natural dissipation of blood-alcohol, the accident investigation, and the hospital transportation time delay—constituted exigent circumstances justifying a nonconsensual, warrantless blood draw. *See id.* at 1417–20.

Contrary to the State's assertion, no case in Missouri supports a *per se* rule that the natural dissipation of blood-alcohol is alone sufficient to constitute exigent circumstances that would permit officers in every DWI case to take blood from a suspect without consent or a search warrant.[5] The State argues that *State v. LeRette* supports its position. 858 S.W.2d 816 (Mo.App.1993). In *LeRette*, the defendant was the driver of an automobile involved a serious-injury accident. *Id.* at 817. When the officer arrived at the scene, emergency personnel were loading the defendant into an ambulance. *Id.* While investigating the

accident, the officer found several beer cans among the wreckage debris, including a half-empty can. *Id.* Later, at the hospital, the officer found the defendant with a tube down his throat and unable to communicate. *Id.* The officer directed a hospital employee to take a blood sample from the defendant for the purpose of determining his blood-alcohol content. *Id. LeRette* justified the warrantless blood draw based on the facts that the percentage of alcohol in the bloodstream diminishes with time and that the delay caused by having to obtain a warrant might result in the destruction of evidence. The court stated that "both prongs of the exigent circumstances exception were established—probable cause that incriminating evidence would be found and exigent circumstances justifying the search." *Id.* at 819. While the court in *LeRette* did not specifically identify the exigent circumstances, it is significant to note that there was some passage in time for the officer to remain at the scene to do investigatory work while the defendant was taken to the hospital. *See id.* at 817. Further, when the officer later arrived at the hospital, he was confronted with an individual with whom he could not communicate. *Id.* at 817.

The factual circumstances in *LeRette* are significantly different from the case here, as notably *LeRette* involved an accident that required investigation and a further time delay when the driver was taken to a

---

**5.** The State cites *State v. Ikerman* and *State v. Setter* to support its position that warrantless blood draws are permissible in DWI cases, but both of these cases applied *Schmerber* in terms of a search incident to arrest. *Setter*, 721 S.W.2d 11, 16 (Mo.App.1986); *Ikerman*, 698 S.W.2d 902, 904–05 (Mo.App.1985). The State acknowledges, however, that "[w]hile *Schmerber* casts its decision in terms of the 'search incident to arrest' exception to the warrant requirement, it has since been read as an application of the 'exigent circum-

stances' exception." Appellant's Substitute Brief at 17; *See also Berry*, 866 F.2d at 891; *Rodriguez*, 156 P.3d at 776; *Johnson*, 744 N.W.2d at 342; *State v. Shriner*, 751 N.W.2d 538, 543 (Minn.2008); *Chapel*, 55 F.3d at 1418; *State v. Bohling*, 173 Wis.2d 529, 494 N.W.2d 399, 402 (1993). To the extent that *Ikerman* and *Setter* interpret *Schmerber* to allow a nonconsensual warrantless blood draw incident to arrest in DWI cases without other exigent circumstances, they are no longer to be followed.

hospital for treatment, unlike the routine DWI stop in this case. *LeRette* embodied a straight forward application of the "special facts" of emergency contemplated by *Schmerber*, in that the DWI suspect in *LeRette*—just as the defendant was in *Schmerber*—was involved in a serious-injury accident that caused a time delay in both the investigation of the accident and the transportation of the defendant to the hospital. *Id.* at 819.[6]

### C. This Court Disagrees with Jurisdictions That Have Adopted

### a Per Se *Exigency Analysis*

In contrast to the forgoing, Wisconsin, Oregon, and Minnesota have adopted the rationale that the rapid dissipation of alcohol alone constitutes a sufficient exigency to draw blood without a warrant. *State v. Bohling*, 173 Wis.2d 529, 494 N.W.2d 399, 406 (1993); *State v. Machuca*, 347 Or. 644, 227 P.3d 729, 736 (2010); *State v. Netland*, 762 N.W.2d 202, 212–13 (Minn.2009). In a 4–3 decision, the Supreme Court of Wisconsin stated:

> *Schmerber* can be read in either of two ways: (a) that the rapid dissipation of alcohol in the bloodstream alone constitutes a sufficient exigency for a warrantless blood draw to obtain evidence of intoxication following a lawful arrest for a drunk driving related violation or crime—as opposed to taking a blood sample for other reasons, such as to determine blood type; or (b) that the rapid dissipation of alcohol in the bloodstream, coupled with an accident, hospi-

talization, and the lapse of two hours until arrest, constitute exigent circumstances for such a blood draw.

*Bohling*, 494 N.W.2d at 402. The Wisconsin court believed that that the more reasonable interpretation of *Schmerber* was the former. *Id.* It reasoned that the exigency in *Schmerber* was caused "solely" by the fact that alcohol dissipates in a person's blood stream over time. *Id. Bohling* held that a warrantless blood draw is permitted when a person is lawfully arrested for a drunken-driving related crime and there is a clear indication that the evidence obtained will produce evidence of intoxication. *Id.* at 406.[7]

Similarly, the Supreme Court of Oregon held that the natural dissipation of a defendant's blood-alcohol is an exigent circumstance that will "ordinarily permit a warrantless blood draw." *Machuca*, 227 P.3d at 736 (relying on its prior interpretation of *Schmerber* in *State v. Milligan*, which stated "the evanescent nature of the evidence sought ... constitutionally justifies [a warrantless blood draw]." 304 Or. 659, 748 P.2d 130, 136 (1988)).

Finally, a divided Supreme Court of Minnesota held that the natural dissipation of alcohol in the blood creates "single-factor exigent circumstances" that justify a warrantless, nonconsensual blood draw. *Netland*, 762 N.W.2d at 212–213 (citing *State v. Shriner*, 751 N.W.2d 538, 549–50 (Minn.2008)). *Shriner* interpreted the *Schmerber* exigency to rest only on the fact that the "percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system." *Shriner,*

---

6. To the extent that *LeRette* could be read as permitting a warrantless blood draw based on the mere fact that alcohol diminishes in the blood stream over time, it is no longer to be followed.

7. In a subsequent 4–3 decision, the Supreme Court of Wisconsin extended its holding in *Bohling* to permit nonconsensual, warrantless blood draws even when the defendant has consented and submitted to a breath test. *State v. Faust*, 274 Wis.2d 183, 682 N.W.2d 371, 379 (2004).

751 N.W.2d at 545 (quoting *Schmerber*, 384 U.S. at 770, 86 S.Ct. 1826; internal quotation marks omitted).

This Court cannot agree with these interpretations of *Schmerber*. In *Schmerber*, the Supreme Court rejected a *per se* exigency and explicitly warned against such expansive interpretations:

> It bears repeating, however, that we reach this judgment only on the facts of the present record. The integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the States minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits ... intrusions under other conditions.

*Schmerber*, 384 U.S. at 772, 86 S.Ct. 1826. *Schmerber* requires some exigency beyond the mere natural dissipation of blood-alcohol evidence. It explicitly found that the time delay that resulted from both the investigation of the accident and the transportation of the defendant to the hospital were "special facts" that authorized a warrantless blood draw under the Fourth Amendment. *Id.* at 770–71, 86 S.Ct. 1826. To allow a warrantless blood draw in the absence of such "special facts" would be to ignore the Supreme Court's statement in *Schmerber* that the Constitution in no way permits warrantless blood draws "under other conditions." *Id.* at 772, 86 S.Ct. 1826.

## IV. Conclusion

 *Schmerber* reaffirms that warrantless intrusions of the body are not to be undertaken lightly and that exigency is to be determined by the unique facts and circumstances of each case. *Schmerber* directs lower courts to engage in a totality of the circumstances analysis when determining whether exigency permits a non-consensual, warrantless blood draw. It requires more than the mere dissipation of blood-alcohol evidence to support a warrantless blood draw in an alcohol-related case. *Schmerber*, 384 U.S. at 770–71, 86 S.Ct. 1826. Officers must reasonably believe that they are confronted with an emergency where the delay in obtaining a warrant would threaten the destruction of evidence. *Id.* at 770, 86 S.Ct. 1826. The question of whether an emergency exists sufficient to trigger the exigent circumstances exception to the warrant requirement heavily depends on the existence of "special facts" and must be determined on a case-by-case basis. In routine DWI cases, in which no "special facts" exist other than the natural dissipation alcohol in the blood, a warrant must be obtained before such evidence is gathered. This requirement ensures that the inferences to support the blood draw be made by a neutral and detached judge "instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson*, 333 U.S. at 13–14, 68 S.Ct. 367. The warrant requirement is especially important when the issue is "whether or not to invade another's body in search of evidence of guilt." *Schmerber*, 384 U.S. at 770, 86 S.Ct. 1826.

 Defendant's case is unquestionably a routine DWI case. Although his body was working naturally to expunge the alcohol in his system, there were no other "special facts" of exigency in his case. There was no accident to investigate and no injuries to attend to that required the patrolman to expend time, delaying his request of Defendant to submit to blood-alcohol testing. The patrolman could not identify any exigent circumstances and made no attempt to obtain a search warrant. The nonconsensual, warrantless blood draw was taken only 25 minutes after Defendant was stopped. Time-based

considerations similar to those in *Schmerber* were not present here.[8] There were no "special facts" in this case, other than the natural dissipation of blood-alcohol, that indicated the arresting patrolman was faced with an emergency where the delay in obtaining a warrant would threaten the destruction of evidence. He was not justified, therefore, in failing to seek a warrant before drawing Defendant's blood over his refusal to consent.[9]

Defendant's Fourth Amendment right to be free from unreasonable searches of his person was violated, and the trial court's judgment sustaining Defendant's motion to suppress is affirmed. The State may go forward in the prosecution of the DWI charge against Defendant based on evidence gathered in conformity with the Constitution. The case is remanded.

TEITELMAN, C.J., RUSSELL, BRECKENRIDGE, FISCHER, STITH, and PRICE, JJ., and ASEL, Sp.J. concur.

DRAPER, J. not participating.

---

8. For example, in *Johnson*, more than two and a half hours had passed between the accident and the warrantless blood draw. *Johnson*, 744 N.W.2d at 344. In *Schmerber*, the exact time that had elapsed was not reflected in the opinion, but the investigation of the accident and the transportation of the defendant to the hospital caused a time delay. *Schmerber*, 384 U.S. at 770–71, 86 S.Ct. 1826.

9. Because the warrantless blood draw in this case was a violation of Defendant's Fourth Amendment right to be free from unreasonable searches, there is no need to address the State's arguments based on Missouri's implied consent law.