

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| **STATE OF MISSOURI,** | ) WD85820 |
| | ) |
| **Respondent,** | ) |
| | ) **OPINION FILED:** |
| v. | ) **DECEMBER 19, 2023** |
| | ) |
| **THERESA O'CONNOR,** | ) |
| | ) |
| **Appellant.** | ) |

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable S. Cotton Walker, Judge

Before Division Three: Lisa White Hardwick, Presiding Judge, Karen King Mitchell, Judge, and Cynthia L. Martin, Judge

Theresa O'Connor ("O'Connor") appeals her conviction of possession of a

controlled substance following a bench trial. O'Connor argues that the trial court clearly

erred in overruling her motion to suppress, and abused its discretion in admitting

evidence obtained from a search of O'Connor's purse without a warrant or valid consent

because the search violated her right to be free from unreasonable searches and seizures

under the Fourth and Fourteenth Amendments of the United States Constitution and

article I, section 15 of the Missouri Constitution. Because the search of O'Connor's purse

without a warrant or valid consent violated the Fourth Amendment, and because there is insufficient evidence to support O'Connor's conviction if the unlawfully obtained evidence is excluded, O'Connor's judgment of conviction and sentence is reversed.

**Factual and Procedural Background**

O'Connor was charged with possession of a controlled substance pursuant to section 579.015.[1] Prior to trial, O'Connor's attorney filed a motion to suppress all evidence obtained as a result of the search of O'Connor's purse, which was conducted without a warrant and pursuant to a third person's consent.

The court conducted a hearing on O'Connor's motion to suppress on February 14, 2022. The evidence presented during the hearing was as follows:[2] On July 13, 2020, at around 8:30 a.m., Officer J. L. and a second officer with the Jefferson City Police Department responded to a "check well-being" request for two subjects in a vehicle in a bank parking lot. A male passenger in the driver's seat was completely unclothed. A female passenger in the front passenger seat had on a shirt but no pants. Both subjects appeared to be sleeping. Officer J. L. contacted the female passenger, and the second officer contacted the male passenger. It took a couple of minutes to wake up both of the passengers, but once the officers did, both appeared to be in good health, and were not in need of medical attention. Officer J. L. testified that the officers proceeded with their

---

[1]All statutory references are to RSMo 2016, as supplemented through July 13, 2020.

[2] The facts and reasonable inferences therefrom must be viewed in the light most favorable to the trial court's ruling on a motion to suppress and in admitting evidence that was subject to a motion to suppress. *State v. Hicks*, 408 S.W.3d 90, 94 (Mo. banc 2013) (citing *State v. McNeely*, 358 S.W.3d 65, 68 (Mo. banc 2012)).

investigation to get the names of the subjects and to gather information to figure out "why they were on the bank parking lot . . . just out of curiosity." Officer J. L. testified that he and the second officer were going to move the two subjects and then ask the bank if it wanted to pursue trespass charges.

After reviewing his report to refresh his recollection, Officer J. L. testified that in furtherance of this investigation, he advised the female passenger to exit the vehicle, at which point she was asked for her name. The female passenger identified herself as O'Connor, and volunteered that she might have an outstanding warrant. Officer J. L. asked O'Connor why she was there. O'Connor first said she and the male passenger had been in the parking lot about an hour, but later said they were there for some time. Officer J. L. asked O'Connor about potential drug use, and she replied that she had not used drugs in several hours. Officer J. L. ran information and verified that O'Connor had an outstanding warrant for her arrest.[3] As a result, Officer J. L. took O'Connor "into custody and placed her in the rear seat of [his] patrol vehicle." On the floor of the vehicle where O'Connor had been sitting was a purse. Officer J. L. testified that "I asked [O'Connor] if she wanted to obtain [the purse] upon taking her into custody. She said no, to leave it there."

After Officer J. L. placed O'Connor in his patrol vehicle, he was advised by the second officer that the male passenger had given "verbal consent to search the vehicle." Officer J. L. testified that based on the male passenger's consent, the officers searched the

---

[3]The nature of the warrant is not explained in the record.

vehicle. Officer J. L. began his search on the passenger side of the vehicle, and searched O'Connor's purse. Officer J. L. knew the purse belonged to O'Connor. Inside the purse, Officer J. L. found "two baggies and a couple [of] red straws that are commonly used in inhaling narcotics." The baggies contained a white powdery substance that Officer J. L. believed to be either methamphetamine or cocaine based on his training and experience.

At the hearing on the motion to suppress, Officer J. L. testified that he then read O'Connor the *Miranda* warning,[4] and asked her about what had been located in her purse. O'Connor admitted that she is a narcotics user and said she believed one of the baggies contained either methamphetamine or cocaine.

Officer J. L. testified that the male passenger was also arrested.[5] When asked to describe the next step he would take in such a situation, Officer J. L. testified "[w]e would contact the business, I guess, and ask if they would allow the vehicle to stay there of if they would want the vehicle removed." Officer J. L. testified that "[t]he car was most likely towed from the scene per the owner's or the bank's request, I guess." He confirmed on cross-examination, however, that he was not the individual who arranged for the vehicle to be towed, and that he did not have a specific recollection of what happened to the vehicle.

At the conclusion of the hearing on O'Connor's motion to suppress, the State conceded that O'Connor had a "closed container" (the purse) that belonged to her in the

---

[4]*Miranda v. Arizona*, 384 U.S. 436 (1966).
[5]There was no testimony during the suppression hearing to explain why the male passenger was arrested, or when the male passenger was arrested in relation to O'Connor's arrest or the search of the vehicle.

4

vehicle, but argued that O'Connor "relinquished possession of that purse to the driver when she told Officer [J. L.] 'I don't want to take it with me. I want to leave it with him.'" The State argued that consent to search the vehicle was given by the driver of the vehicle. The State conceded that "[w]hether that [consent] extended to the purse or not is arguable. But in any sense, [O'Connor] did not claim that she wanted to keep the purse with her." The State argued alternatively that the purse would have been searched in connection with an inventory search of the vehicle by the towing company because "every towing company makes sure that that happens so it's not on the hook for anything that's inside the car. So we have an inevitable discovery argument."

O'Connor's counsel argued that there was no evidence permitting a conclusion that Officer J. L. reasonably believed that the male passenger's consent to search the vehicle extended to O'Connor's purse; that there was no evidence of what tow companies usually do or expect; and that there was no evidence of what happened to the vehicle after O'Connor and the male passenger were arrested.

The motion to suppress was taken under advisement. The State and O'Connor submitted post-hearing briefs. Relevant to this appeal, the State's brief in opposition to the motion to suppress argued that the evidence found in O'Connor's purse should not be suppressed because it was obtained through a consensual search of the vehicle, and that the male passenger who gave consent to search the vehicle shared joint control over O'Connor's purse sufficient to permit Officer J. L. to reasonably believe that the male passenger had authority to consent to a search of the purse. The State also argued, in the alternative, that the evidence discovered through the warrantless search of O'Connor's

5

purse should nonetheless be admissible even if the search of the purse was constitutionally invalid because the vehicle was towed from the scene "per Jefferson City Police Department procedure," and "the contents of the car would have been inventoried per Jefferson City Police Department procedures," leading to the inevitable discovery of the contents of the purse.

In response, O'Connor filed suggestions in support of the motion to suppress, and argued that no officer could have reasonably believed that the male passenger in the vehicle had authority to consent to a search of O'Connor's purse because there was no evidence that the male passenger possessed common authority over the purse. O'Connor also argued that there was no evidence to support a conclusion that the vehicle was towed from the scene at all, let alone pursuant to Jefferson City Police Department procedures, or that its contents would have been inventoried pursuant to Jefferson City Police Department procedures had it been towed from the scene.

By docket entry dated March 28, 2022, the trial court noted it had considered the evidence from the hearing on the motion to suppress as well as the briefing submitted by the parties, and that the motion was denied.

At a bench trial conducted on July 29, 2022, O'Connor objected when Officer J. L. began to testify about the search of O'Connor's purse based on the arguments made in the motion to suppress. The objection was overruled, and a continuing objection was permitted. Officer J. L. then testified in a manner that was generally consistent with the testimony he gave during the suppression hearing, though he added that once he confirmed O'Connor's volunteered report that she had an outstanding warrant, he placed

6

her in handcuffs and read her the *Miranda* warnings when she was taken into custody and placed in the patrol car (and thus before, not after, the search of the vehicle). Officer J. L. again testified that the search of the vehicle was conducted pursuant to consent provided by the male passenger. And, Officer J. L. testified that after finding baggies that he believed contained drugs in O'Connor's purse, he asked O'Connor what she suspected was in the baggies, and she said she believed one baggie was methamphetamine and one baggie was cocaine.

On cross-examination, Officer J. L. confirmed that when he first asked O'Connor to exit the vehicle, her purse remained in the car. Officer J. L. also confirmed that O'Connor did not have her purse on her at any point after she was asked to exit the vehicle.

A lab technician testified that the white powdery substance found in the baggies in O'Connor's purse was determined to be methamphetamine and cocaine.

O'Connor was convicted as charged. On November 8, 2022, the trial court sentenced O'Connor to seven years in the Department of Corrections, with execution of sentence suspended while O'Connor was placed on probation for five years.

O'Connor filed this timely appeal.

**Standard of Review**

"In reviewing the trial court's ruling on a motion to suppress, an appellate court considers the evidence presented at the suppression hearing and at trial to determine whether sufficient evidence exists to support the trial court's ruling." *State v. Hicks*, 408 S.W.3d 90, 94 (Mo. banc 2013) (citing *State v. Gaw*, 285 S.W.3d 318, 319-20 (Mo. banc

7

2009)).  "The facts and reasonable inferences therefrom must be viewed in the light most favorable to the trial court's ruling."  *Id.* (citing *State v. McNeely*, 358 S.W.3d 65, 68 (Mo. banc 2012)).  "The trial court's decision overruling a motion to suppress will be reversed only if it was clearly erroneous."  *Id.* (citing *McNeely*, 358 S.W.3d at 68).  However, "[w]hether conduct violates the Fourth Amendment is a question of law, which is reviewed *de novo*."  *McNeely*, 358 S.W.3d at 68 (citing *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007)).

**Analysis**

In her single point on appeal, O'Connor argues that the trial court clearly erred in overruling her motion to suppress, and abused its discretion in admitting evidence obtained from a warrantless search of O'Connor's purse because the search violated O'Connor's right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments of the United States Constitution and article I, section 15 of the Missouri Constitution.  Specifically, O'Connor argues that: (1) she had a reasonable expectation of privacy in the contents of her purse which she did not abandon; (2) the male passenger in the vehicle did not have actual or apparent authority to consent to the search of her purse; and (3) the inevitable discovery rule does not apply to overcome the constitutionally invalid search of her purse.

"The Fourth Amendment of the United States Constitution preserves the right of the people to be secure against unreasonable searches and seizures."  *State v. Deck*, 994 S.W.2d 527, 534 (Mo. banc 1999).  "Missouri's constitutional 'search and seizure' guarantee, article I, section 15, is co-extensive with the Fourth Amendment."  *Id.* (citing

8

*State v. Rushing*, 935 S.W.2d 30, 34 (Mo. banc 1996)).  "The prohibition of the Fourth Amendment against unreasonable searches and seizures is enforceable against the states through the due process clause of the Fourteenth Amendment . . . ."  *State v. Witherspoon*, 460 S.W.2d 281, 283-84 (Mo. 1970) (citing *Mapp v. Ohio*, 367 U.S. 643, 655 (1961)).

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment--subject only to a few specifically established and well-delineated exceptions."  *Katz v. United States*, 389 U.S. 347, 357 (1967).  Where the State seeks to invoke an exception, it has the burden of showing that the exception applies.  *Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971); *Witherspoon*, 460 S.W.2d at 284.  Thus, "[a]t a hearing on a motion to suppress and ultimately at trial, the state has the burden to justify a warrantless search and seizure."  *Deck*, 994 S.W.2d at 534 (citing *State v. Villa-Perez*, 835 S.W.2d 897, 902 (Mo. banc 1992)); *see* section 542.296.6.[6]

Here, there is no dispute that Officer J. L. searched O'Connor's purse without a warrant, and testified that he did so in reliance on consent to search the vehicle provided by the male passenger.  And, there is no dispute that the State defended the warrantless

---

[6]Section 542.296.1 provides that "[a] person aggrieved by an unlawful seizure made by an officer and against whom there is a pending criminal proceeding growing out of the subject matter of the seizure may file a motion to suppress the use in evidence of the property or matter seized."  Section 542.296.6 provides that "[t]he judge shall receive evidence on any issue of fact necessary to the decision of the motion.  The burden of going forward with the evidence and the risk of nonpersuasion shall be upon the state to show by a preponderance of the evidence that the motion to suppress should be overruled."

9

search by relying on two exceptions during the suppression hearing: (i) that Officer J. L. could have reasonably believed that the male passenger gave effective consent to search the purse because he had joint access to or shared control over the purse, or actual or apparent authority to consent to a search of the purse; or alternatively, (ii) that the drugs inside the purse would have been inevitably discovered. O'Connor's point relied on argues that neither exception urged by the State during the suppression hearing could have supported overruling the motion to suppress. In addition, O'Connor's point relied on argues that the motion to suppress could not have been overruled based on an argument that she abandoned the purse, and thus her reasonable expectation of privacy in the purse, when she left it in the vehicle with the male passenger. O'Connor's point relied on addresses the abandonment issue even though the State did not argue that O'Connor abandoned her purse during the suppression hearing or in its post-hearing brief, because "'the proponent of a motion to suppress has the initial burden of proving that he is a person who is 'aggrieved' by an unlawful search and seizure pursuant to [s]ection 542.296.'" *State v. Fernandez*, 671 S.W.3d 856, 863 (Mo. App. W.D. 2023) (quoting *State v. West*, 548 S.W.3d 406, 413 (Mo. App. W.D. 2018)); *see also State v. McCrary*, 621 S.W.2d 266, 273 (Mo. banc 1981) ("The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure.") (quoting *Rakas v. Illinois*, 439 U.S. 128, 131 n.1 (1978)); *State v. Hindman*, 446 S.W.3d 683, 688 (Mo. App. W.D. 2014) (holding that "the defendant bears the initial, threshold burden of proving that she has been aggrieved by the search or, stated another way, that she has standing to challenge the search").

10

Because the trial court denied the motion to suppress without explaining its rationale for doing so, all three potential bases for affirming the trial court's ruling must be addressed.

### O'Connor's Reasonable Expectation of Privacy in the Contents of Her Purse Was Not Abandoned

"It is well established that a warrantless search or seizure of abandoned property does not violate the Fourth Amendment."  *State v. Mosby*, 94 S.W.3d 410, 417 (Mo. App. W.D. 2003) (citing *Hester v. United States*, 265 U.S. 57 (1924); *Abel v. United States*, 362 U.S. 217, 241 (1960)).

> It is settled law that one has no standing to complain of the search or seizure of property which he has voluntarily discarded, left behind, or otherwise relinquished his interest so that he no longer retains a reasonable expectation of privacy with regard to it at the time of the search or seizure.

*Fernandez*, 671 S.W.3d at 863 (quoting *McCrary*, 621 S.W.2d at 273).  Though the concept of "standing" is often referred to when discussing whether a defendant is properly positioned to complain of a search or seizure of property, in the context of an alleged Fourth Amendment violation, an argument that a defendant lacks "standing" to challenge the constitutional validity of a search "is another way of stating that the search and seizure did not infringe upon an *interest* that is protected by the Fourth Amendment." *State v. Faruqi*, 344 S.W.3d 193, 204 (Mo. banc 2011) (citing *Rakas*, 439 U.S. at 139-40).

11

O'Connor had an objectively reasonable expectation of privacy in the contents of her purse at the time officers first arrived on the scene.[7] *See, e.g.*, *United States v. Welch*, 4 F.3d 761, 764 (8th Cir. 1993) ("[A] purse is a type of container in which a person possesses the highest expectations of privacy."), *overruled on other grounds by United States v. Kim*, 105 F.3d 1579, 1580-81 (9th Cir. 1993); *State v. Courtney*, 102 S.W.3d 81, 85 (Mo. App. W.D. 2003) (holding that a defendant's expectation of privacy in personal objects is objectively reasonable when the defendant conceals those objects in a container); *State v. Looney*, 911 S.W.2d 642, 644 (Mo. App. S.D. 1995) (holding that a person can "manifest [a] legitimate expectation[] of privacy by placing items in [a] closed, opaque container[] that concealed [its] contents from plain view"). The question is whether O'Connor's reasonable expectation of privacy in the contents of her purse was abandoned at some point after officers arrived on the scene. "Whether property has been abandoned 'is determined on the basis of the objective facts available to the investigating officer[], not on the basis of the owner's subjective intent.'" *United States v. Nowak*, 825

---

[7]The State argues that because O'Connor did not testify during the hearing on the motion to suppress, she failed as a matter of law to meet her threshold burden to establish that she had an actual expectation of privacy in her purse at any point. It is true that in order "[t]o claim the protection of the Fourth Amendment, 'a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable.'" *State v. Faruqi*, 344 S.W.3d 193, 205 (Mo. banc 2011) (quoting *Minnesota v. Carter*, 525 U.S. 83, 88 (1998)). However, there is no authority for the proposition that the only means by which this burden can be sustained is through the defendant's testimony. Here, the evidence presented during the hearing on the motion to suppress plainly established that O'Connor acknowledged that the purse was her property. It can be reasonably inferred from this fact, and from the commonly understood nature of a purse, that objects concealed within a purse are subject to both a subjectively and an objectively reasonable expectation of privacy.

12

F.3d 946, 948 (8th Cir. 2016) (quoting *United States v. James*, 534 F.3d 868, 873 (8th Cir. 2008)). This determination is made in light of the totality of the circumstances, although two factors are of particular importance: whether a defendant denies ownership of property that is searched and whether a defendant physically relinquishes the property. *Id.* (citing *United States v. Simpson*, 439 F.3d 490, 494 (8th Cir. 2006)); *see also United States v. Tugwell*, 125 F.3d 600, 602 (8th Cir. 1997).

Here, O'Connor never denied ownership of the purse, and instead acted at all times consistent with admitting ownership of the purse. Officer J. L. testified that he knew the purse belonged to O'Connor. His subjective belief that O'Connor owned the purse was objectively supported by the facts, which included that O'Connor was the only female passenger in the vehicle; that a purse typically belongs to a female; that the purse was found on the floor in the front seat passenger compartment of the vehicle where O'Connor was sleeping when officers first arrived at the scene; and that O'Connor did not disclaim ownership of the purse when Officer J. L. asked her if she wanted to bring the purse with her as he took her into custody.

The State concedes that O'Connor never disclaimed ownership of her purse. The State argues, however, that O'Connor nonetheless "physically relinquished" the purse. O'Connor did not, however, physically relinquish her purse when she first exited the vehicle without it, as she got out of the vehicle in compliance with Officer J. L.'s command to do so. *See, e.g.*, *People v. James*, 645 N.E.2d 195, 203 (Ill. 1994) (holding that a purse left behind in a vehicle has not been abandoned when a passenger gets out of the vehicle at the request or command of a police officer). Nor did she physically

13

relinquish her purse when she was handcuffed, taken into custody, and placed in the back of Officer J. L.'s patrol car, as the purse was not in her possession at that time, and had remained in the vehicle at all points after she was directed to exit the vehicle.

The State argues, however, that because Officer J. L. gave O'Connor the opportunity to bring her purse with her when she was arrested on an unrelated outstanding warrant, her decision not to do so constituted "physical relinquishment" sufficient to support an objectively reasonable belief that she abandoned the purse. We do not agree.

During the hearing on the motion to suppress, in response to a question from the State asking "what did you do in your part of the search of the vehicle," Officer J. L. responded:

> I searched the area where Miss O'Connor was sitting. ***There was a purse-- her purse located on the floor which I asked if she wanted to obtain upon taking her into custody. She said no, to leave it there***. But I did locate the purse that was in the vehicle and located two baggies and a couple [of] red straws that are commonly used in inhaling narcotics.

(Emphasis added.) The emphasized portion of Officer J. L.'s testimony was not directly responsive to the State's question. More importantly, however, the emphasized testimony represents the extent of the evidence regarding O'Connor's supposed "physical relinquishment" of her purse. At the conclusion of the suppression hearing, the State did not argue that this evidence supported a finding that O'Connor relinquished her privacy interest in the contents of her purse by abandoning the purse. Instead, the State argued that O'Connor "relinquished possession of that purse to the driver when she told Office [J. L.], 'I don't want to take it with me. I want to leave it with him,'" to support its contention

14

that the male passenger had been given authority and control over the purse so that his consent to search the vehicle extended to the purse. The State's post-hearing brief similarly did not argue that Officer's J. L.'s testimony required a conclusion that O'Connor abandoned her purse, and instead argued that leaving the purse behind supported a finding that the male passenger had the apparent authority to consent to a search of the purse. Of course, although the State did not argue abandonment, because O'Connor was first required to establish that she had a reasonable expectation of privacy in her purse at the time it was searched, we must determine whether the thin evidentiary record about O'Connor's decision to leave her purse in the vehicle when she was placed under arrest constituted "physical relinquishment" sufficient to find that she abandoned her privacy interest in the purse.

Officer J. L.'s limited testimony at trial does not support an objectively reasonable conclusion that O'Connor physically relinquished her privacy interest in her purse. The evidence at the suppression hearing and at trial established that O'Connor was under arrest for an outstanding warrant that had nothing to do with the circumstances that officers encountered when called to the scene, and that she had been handcuffed and Mirandized and was being transported to Officer J. L's patrol car when Officer J. L. asked O'Connor if she wanted to obtain her purse from the vehicle. O'Connor's response to leave the purse in the vehicle does not support an objectively reasonable conclusion that she was "physically relinquishing" her purse "in a manner manifesting an intent never to reclaim" the purse. *United States v. James*, 353 F.3d 606, 616 (8th Cir. 2003). "[A] person does not abandon his property merely because he gives it to someone else to

store." *Id.*; *cf. United States v. Landry*, 154 F.3d 897, 899 (8th Cir. 1998) (holding that trial court did not clearly err when it found suspect abandoned a bag the suspect purposefully placed by the wheels of an outdoor trash dumpster before walking fifty feet away from the bag to use a public pay phone). To the contrary, consistent with her admitted ownership of the purse, O'Connor's choice to leave the purse in the vehicle manifests an intent to leave the purse in a protected location since she had been taken into custody and was about to be transported to jail.

The State disagrees and argues that O'Connor "abandoned any reasonable expectation of privacy in the purse by . . . leaving the purse in the location where police were searching," and asserts that O'Connor "knew that police were searching the car." [Respondent's Brief pp. 9, 14-15] We agree that if O'Connor knew the vehicle was being searched or was going to be searched when she elected not to obtain her purse, that fact would be relevant to determining whether O'Connor abandoned her reasonable expectation of privacy in the purse based on the totality of the circumstances. *See, e.g.*, *Tugwell*, 125 F.3d at 603 (favorably citing *United States v. Nordling*, 804 F.2d 1466, 1470 (9th Cir. 1986), which rejected defendant's claim that later admission of ownership of a bag constituted a reassertion of a privacy interest in the property when the bag was initially left under "circumstances in which it was virtually certain that the bag would be opened, inspected and turned over to law enforcement authorities before he could possibly attempt to reexert physical control"); *Maxwell v. State*, 443 So.2d 967, 968-69 (Fla. 1983) (holding where passenger on Greyhound bus fleeing a recently committed murder was detained for questioning, and upon being told to claim any bags, the

16

passenger claimed only one suitcase, later search of bags left behind on the bus did not violate the passenger's Fourth Amendment rights in a bag he did not claim because the passenger manifested an intent to abandon the unclaimed bag under circumstances where he knew it was likely to be searched).

The problem for the State, however, is that its bare contention that O'Connor "knew that police were searching the car" when she decided to leave her purse in the vehicle following her arrest is not supported by *any* citation to the record.[8]  In fact, contrary to the State's unsupported assertion, Office J. L. testified during the hearing on the motion to suppress that when he and the second officer arrived at the scene, their intent was to try to determine "why they were on the bank parking lot . . . just out of curiosity[,] . . . [and] we were going to move them on and then ask the bank if they wanted them trespassed at all from the location."  In other words, there was no intent at that time to search the vehicle.  Officer J. L. testified at the hearing on the motion to suppress and at trial that he learned from the second officer that the male passenger had given consent to search the vehicle *after* O'Connor was taken into custody and placed in his patrol car, and thus *after* he had asked O'Connor whether she wanted to obtain her

---

[8]Similar unsubstantiated factual assertions are made at multiple locations in the State's brief, with no citation to the record.  The unsubstantiated factual assertions are so frequent as to be egregious.  There is a vast difference between zealous advocacy and blatant misstatements about the evidence.  We should be able to expect fidelity to the record from the Attorney General's office, whose role in criminal matters "transcends that of an adversary: he 'is the representative not of an ordinary party to a controversy, but of a sovereignty . . . whose interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done.'"  *United States v. Bagley*, 473 U.S. 667, 675 n.6 (1985) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)).

17

purse. Officer J. L. testified at the hearing on the motion to suppress and at trial that the search of the vehicle was based exclusively on the consent secured from the male passenger. If Officer J. L. did not arrive at the scene with an expectation that circumstances warranted a search of the vehicle, and if Officer J. L. did not know that the male passenger provided consent to search the vehicle until after O'Connor was taken into custody and asked about obtaining her purse, and if Officer J. L. thereafter conducted a search of the vehicle based solely on the male passenger's consent, then it is impossible that O'Connor "knew that police were searching the car" when she was taken into custody and asked if she wanted to obtain her purse.

Nor is there any evidence in the record that permits an inference that O'Connor suspected the vehicle would be searched. Her initial arrest was based on an outstanding warrant that although not explained by the record, was plainly unrelated to being found asleep in a vehicle parked at a bank parking lot. There is nothing in the record to suggest that O'Connor knew or had reason to know that the second officer intended to seek consent to search the vehicle from the male passenger. There is nothing in the record to establish when the male passenger was arrested in relation to O'Connor being taken into custody, and thus nothing to permit an inference that O'Connor knew the male passenger was under arrest when she was asked about obtaining her purse. Instead, the only objectively reasonable conclusion from the facts in evidence is that after being arrested on an unrelated outstanding warrant, and placed in a patrol car for anticipated transport to jail, O'Connor decided to leave her purse in a place where she had no reason to believe it would not be secure until she could return for it later.

18

The trial court's overruling of O'Connor's motion to suppress and subsequent admission over objection of the evidence obtained following a warrantless search of O'Connor's purse cannot be justified on the basis that O'Connor abandoned her purse, and thus her reasonable expectation of privacy in its contents.

We turn our discussion to whether the male passenger's consent to search the vehicle extended to authorize Officer J. L.'s search of O'Connor's purse.

***The Male Passenger's Consent to Search the Vehicle Did Not Extend to O'Connor's Purse***

"The search of property without warrant but with proper consent voluntarily given is valid under the [F]ourth [A]mendment." *State v. Blair*, 638 S.W.2d 739, 750 (Mo. banc 1982) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). "A third party with joint access or control of the premises sought to be searched has authority to consent to a search, and that consent is valid against any absent persons with whom that authority is shared." *State v. Smith*, 966 S.W.2d 1, 7 (Mo. App. W.D. 1997) (citing *State v. Bunch*, 787 S.W.2d 859, 861 (Mo. App. E.D. 1990)). "[T]he authority which justifies the third[-]party consent does not rest upon the law of property but rests instead on mutual use of the property by persons generally having joint access or control for most purposes." *Id.* at 8 (quoting *State v. Nevels*, 712 S.W.2d 688, 691 (Mo. App. W.D. 1986)).

The determination of whether third-party consent to search extends to an absent person's property is made using an objective standard. "As with other factual determinations bearing upon search and seizure, determination of consent . . . must 'be

19

judged against an objective standard: would the facts available to the officer at the moment . . . warrant a [person] of reasonable caution in the belief ' that the consenting party had authority over the premises?" *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990) (quoting *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)).  This objective standard, which is applied through the lens of the officer conducting a search, thus contemplates that the State can establish consent effective to support a warrantless search if the third party who provided consent had either actual or apparent authority to consent to the search of an absent person's property.  *See Welch*, 4 F.3d at 763-64 (addressing whether a male passenger had either the actual or apparent authority to give effective consent to the search of his female companion's purse).  "Under the apparent authority doctrine, a search is valid if the government proves that the officers who conducted it reasonably believed that the person from whom they obtained consent had the actual authority to grant that consent." *Id.* at 764.  An objectively reasonable belief that the person from whom consent has been obtained had the authority to grant the consent will suffice to permit a warrantless search even if the belief later turns out to be erroneous.  *Rodriguez*, 497 U.S. at 186.  Though by sharing the use of a vehicle, a passenger relinquishes, in part, an expectation of privacy with respect to the vehicle itself, a passenger does not have "similarly limited privacy expectations in items within the car which are independently the subject of such expectations." *Welch*, 4 F.3d at 764.  "The shared control of 'host' property does not serve to forfeit the expectation of privacy in containers within that property." *Id.* (citing *United States v. Karo*, 468 U.S. 705, 725-27 (1984) (O'Connor, J., concurring)).

20

Here, it is uncontested that the male passenger gave the second officer consent to search the vehicle; that this information was communicated by the second officer to Officer J. L.; and that the subsequent search of the vehicle was conducted based solely on the consent provided by the male passenger. There is nothing in the record to suggest, however, that O'Connor expressly authorized the male passenger to consent to a search of her purse. And there is nothing in the record to suggest that the male passenger actually owned, or had joint access to, or shared control over, O'Connor's purse. In fact, Officer J. L. testified that he knew the purse belonged to O'Connor. As a result, there is no evidence in the record to establish that the male passenger had actual authority to consent to a search of O'Connor's purse. The State does not argue to the contrary.

That leaves whether Officer J. L. had an objectively reasonable belief that the male passenger had apparent authority to consent to a search of O'Connor's purse despite Officer J. L.'s knowledge that the purse belonged to O'Connor. The record fails to establish the nature of the relationship between the male passenger and O'Connor, or that Officer J. L. had any knowledge about the relationship. It is true that the male passenger and O'Connor were found together in the vehicle, and that nothing about the manner in which they were found suggested that O'Connor was in the vehicle with the passenger unwillingly. However, when O'Connor was taken into custody on a charge unrelated to her presence in the bank parking lot, and when she was asked about obtaining her purse, there is no evidence suggesting that she was aware that the officers were planning to search the vehicle, that she was aware that the second officer was seeking the male passenger's consent to search the vehicle, or that she was aware that the male passenger

21

had given his consent to search the vehicle. In addition, there is no evidence about when the male passenger was arrested, and thus no evidence that O'Connor knew the male passenger was arrested before being asked about obtaining her purse. All that the facts establish is that Officer J. L. learned that the male passenger had consented to a search of the vehicle after he had placed O'Connor in his patrol car, that Officer J. L. undertook to search the passenger compartment of the vehicle based solely on the male passenger's consent, that Officer J. L. knew the purse on the floor in the passenger compartment area of the vehicle belonged to O'Connor, and that Officer J. L. knew that O'Connor elected to leave the purse in the vehicle after she was taken into custody on an unrelated outstanding warrant.

These facts are not sufficient to support an objectively reasonable belief that the male passenger had apparent authority to consent to a search of O'Connor's purse. Stated another way, these facts are not sufficient to support an objectively reasonable belief that the male passenger who consented to a search of the vehicle had the actual authority to consent as well to a search of the purse in the vehicle. "A girlfriend does not give her boyfriend authority to consent to a search of her purse left in the trunk of a rental car by the mere fact of their relationship and her having left it in the car." *James*, 353 F.3d at 614 (citing *Welch*, 4 F.3d at 764); *see also United States v. Munoz*, 590 F.3d 916, 922-23 (8th Cir. 2010) (holding that passenger's consent to search car the passenger had rented did not extend to backpack located on floor by passenger seat of the vehicle where defendant owned the backpack and passenger did not have joint use of the backpack, and where officer had no knowledge of who owned the backpack nor any reason to believe

22

the passenger who gave consent to search the vehicle had any authority to consent to a search of the backpack).

In fact, the circumstances in this case cannot be differentiated from those in *Welch*, 4 F.3d at 763-765, where the warrantless search of a purse in a vehicle was held to be constitutionally invalid despite consent to search the vehicle having been provided by a male passenger. In *Welch*, officers knew the male passenger was the owner and driver of the vehicle; knew that the male passenger and the female passenger had been traveling together and were in a personal relationship; and knew that the purse located in the trunk of the vehicle belonged to the female passenger. *Id.* at 765. Though the male passenger gave consent to search the vehicle, his consent was given outside the girlfriend's presence, and the girlfriend did not know that the police wanted to search either the vehicle or her purse. *Id.* Neither the "mere presence of the handbag in the trunk," nor the fact that the girlfriend left her purse in the vehicle "gave [her boyfriend] the right to open it without her consent." *Id.* As such those "facts" could not support an objectively reasonable belief by the officers that the boyfriend had the apparent authority to consent to a search of the purse. *Id.*

The State argues that here, in addition to O'Connor voluntarily leaving her purse in the vehicle after being given an opportunity to obtain it, she knew the police were searching the car, and that before searching the purse "Officer J. L. gave [O'Connor] an opportunity to tell him not to search the purse." [Respondent's Brief, p. 14] We are once again troubled by the fact that the State cites to absolutely no evidence in the record to

23

support either factual assertion because there is no evidence in the record to support either factual assertion.[9]

This case is thus readily distinguishable from *State v. Matejka*, 621 N.W.2d 891 (Wis. 2001), relied on by the State. In *Matejka*, the court held that a driver's consent to search a vehicle justified the warrantless search of a jacket belonging to a passenger where the jacket was left in a common area of the vehicle "by virtue of the joint access and mutual use of the interior of the [vehicle] shared by the driver and his passengers." *Id.* at 898. The court reached this conclusion without focusing "on the third-party's authority over the specific object in question, but [instead on] the third-party's authority over the premises in which that object is located." *Id.* However, the court was careful to differentiate a jacket (whose ownership was not known to, or determined by, the officers at the time of the search) from other items that might be found in a vehicle, noting "[t]his was not, for example, a locked suitcase or briefcase or other such item of private, personal property which might give rise to a different focus for the common authority analysis." *Id.* And after doing so, the court expressly pointed to an example--the passenger's purse--which the court observed was not searched based on the consent of the driver, but instead as an incident to the passenger's subsequent arrest. *Id.* at 898 n.6. Moreover, the court was quick to bolster its conclusion that a warrantless search of the passenger's jacket was supported by the driver's consent because the passenger "was present and aware of the fact that [the driver] had consented to the search of the common

---

[9]*See supra* note 8.

area, the interior of the [vehicle], and yet made no attempt to circumscribe the scope of the search to exclude her jacket." *Id.*

*Matejka* is thus of no aid to the State, though its underscoring of the passenger's knowledge of the driver's consent to search the vehicle perhaps explains the State's troubling attributions to unsubstantiated "facts" that are not in any manner borne out by the record. If anything, *Matejka* reinforces that whether a driver's consent to search supports an objectively reasonable belief that the driver had the apparent authority to consent to the search of a passenger's closed container in a vehicle is a highly fact specific determination, influenced by such things as: whether the officer knew or reasonably should have known that the closed container belonged to the passenger; the nature of the closed container and whether its inherent attributes suggest it is a highly personal item as to which shared or common authority cannot be reasonably assumed; whether the passenger knew a search of the vehicle was underway or about to occur; whether the passenger knew that the driver had given consent to search the vehicle; and whether the passenger had an opportunity to circumscribe the scope of the search to exclude property he or she owned. It is of no surprise, therefore, that these factual variables are largely responsible for explaining why cases go both ways when addressing whether a driver's consent to the search of a vehicle extends to the warrantless search of a passenger's belongings (particularly closed containers) within the vehicle.[10]

---

[10]Courts that have concluded that the search of a passenger's property in a vehicle based upon the driver's consent is constitutional include: *United States v. Navarro*, 169 F.3d 228 (5th Cir. 1999), *cert. denied*, 528 U.S. 845 (1999) (driver's consent to search vehicle extended to passenger's luggage in back seat where passenger was aware of

We conclude that Officer J. L. did not have an objectively reasonable basis to conclude that the male passenger's consent to search the vehicle extended to a search of O'Connor's purse. Our conclusion is consistent with the holding in *State v. Smith*, 966 S.W.2d 1 (Mo. App. W.D. 1997). In *Smith*, officers searched a home based on the consent of the defendant's girlfriend. *Id.* at 3. They found evidence connecting Smith to

driver's consent and did not object to the search of the luggage); *United States v. Crain*, 33 F.3d 480 (5th Cir. 1994), *cert. denied*, *Watkins v. United States*, 513 U.S. 1169 (1995) (driver's consent to search vehicle extended to passenger's paper bag found under front seat where passenger was aware of the search); *United States v. Anderson*, 859 F.2d 1171 (3d Cir. 1988) (where neither passenger owned vehicle, but driver gave consent to search the vehicle, that consent extended to passenger's bags in the trunk over which drive had common authority, particularly as non-consenting passenger was silent during search of the trunk, inconsistent with a claim of a unique expectation of privacy in the bags in the trunk); *State v. Walton*, 565 So. 2d 381 (Fla. Dist. Ct. App. 1990) (driver's consent to search vehicle extended to passenger's suitcase in trunk absent any protest to search by the passenger or claim of ownership by passenger though passenger was aware of search); *State v. Frizzel*, 975 P.2d 1187 (Idaho Ct. App. 1999) (holding that where a passenger who owns an item in a vehicle remains silent while third party gives consent to search that item, it is objectively reasonable for an officer to conclude that he had sufficient consent to validly search the item).

Courts that have concluded that the search of a passenger's property in a vehicle based upon the driver's consent is unconstitutional include: *United State v. Jaras*, 86 F.3d 383 (5th Cir. 1996) (driver's consent to search vehicle did not extend to passenger's suitcases where driver informed officer that the suitcases were not his); *United States v. Welch*, 4 F.3d 761 (9th Cir. 1993) (driver's consent to search vehicle did not extend to search of passenger's purse where officer knew purse belonged to passenger and passenger was unaware that consent to search had been given); *People v. James*, 645 N.E.2d 195 (Ill. 1994) (driver's consent to search vehicle did not extend to passenger's purse where passenger was unaware that drive had consented to a search of the vehicle); *State v. Friedel*, 714 N.E.2d 1231 (Ind. Ct. App. 1999) (driver's consent to search vehicle did not extend to passenger's purse left on floor of backseat when she exited vehicle at the command of officer); *State v. Caniglia*, 510 N.W.2d 372 (Neb. 1993) (driver's consent to search vehicle did not extend to passenger's makeup bag where officers could not have reasonable belief male driver owned the bag or shared common authority over the bag, and there was no evidence bag was abandoned); *State v. Suazo*, 627 A.2d 1074 (N.J. 1993) (driver's consent to search vehicle did not extend to passenger's bag removed from trunk where officer was aware bag belonged to passenger).

26

the home during the search, including his driver's license and personal papers. *Id.* at 4.

They also found a locked safe in the home, which the officers carried outside, and forced

open. *Id.* Inside the safe, officers located ammunition that connected Smith to a murder.

*Id.* On appeal, Smith argued that it was error to deny his motion to suppress and to admit

evidence obtained from the house and the safe. *Id.* at 7. We rejected Smith's contention

that the warrantless search of the house based on the girlfriend's consent was

unconstitutional, and noted that when the girlfriend consented to a search of the home,

she told officers she owned the home jointly with Smith, having helped to purchase the

home with money from her parents. *Id.* at 8. She also told officers she and Smith were

not living in the home at the time due to plumbing issues, and that she had been at the

home the previous day to secure a broken door by nailing it shut. *Id.* We concluded that

this evidence was "sufficient to support a finding either that [the girlfriend] had actual

control over and access to [the home] or, at the very least, that the detectives reasonably

believed that she had the authority to consent to the search of the house." *Id.* We

reached a different conclusion, however, with respect to the locked safe, and concluded

that the State failed to sustain its "burden of producing and presenting evidence, and the

risk of non-persuasion to show by a preponderance of the evidence that the motion [to

suppress] should be overruled." *Id.* We noted that the "State produced no evidence that

[the girlfriend] had any interest in the safe or its contents so as to legally enable her to

consent to the search," and that "there [was] no evidence that [girlfriend] even purported to consent to a search of the safe."[11]  *Id.* at 8-9.

The result should be and is the same here.  Though the male passenger appears to have had the authority to consent to a general search of the vehicle, there was no evidence presented by the State to sustain its burden of production and persuasion to show by a preponderance of the evidence that the male passenger had the apparent authority to extend his consent to O'Connor's purse.  *See James,* 353 F.3d at 614 ("A girlfriend does not give her boyfriend authority to consent to a search of her purse left in the trunk of a rental car by the mere fact of their relationship and her having left it in the car."); *James*, 645 N.E.2d at 198 ("It would have been unreasonable for the officer to believe that [male passenger] shared some common use in the purse with one of the passengers in the vehicle, since a purse is generally not an object for which two or more persons share common use and authority.").

---

[11]We addressed the suppression of evidence issue in *Smith*, despite reversing the defendant's conviction and remanding for a new trial based on instructional error, because the issue was likely to recur in the second trial.  966 S.W.2d at 7.  On remand, Smith filed a renewed motion to suppress, which was overruled.  *State v. Smith*, 90 S.W.3d 132, 140 (Mo. App. W.D. 2002).  On appeal, we affirmed the trial court's overruling of the motion to suppress noting that during the hearing on the renewed motion to suppress, the officer who searched the safe testified that Smith's girlfriend said that the safe belonged to both she and the defendant, and that the girlfriend provided consent for officers to break into the safe as she did not remember the combination.  *Id.* at 141.  The State relies on our opinion following the second appeal in *Smith* in the instant case, but that reliance is of no aid to the State given the lack of any evidence in this case that the male passenger was asked whether, or reported that, he co-owned O'Connor's purse.

The trial court's decision to overrule the motion to suppress and to permit the admission of evidence obtained from the warrantless search of O'Connor's purse is not supported by the male passenger's consent to search the vehicle.

### *The Search of O'Connor's Purse Is Not Defensible Based on the Alternative Argument that the Contents of the Purse Would Have Been Inevitably Discovered*

During the suppression hearing, the State argued that even if the warrantless search of O'Connor's purse was not constitutionally permitted based on the male passenger's consent to search the vehicle, the evidence found in the purse should not be subject to suppression or exclusion because of the inevitable discovery rule. "Evidence discovered and later found to be derivative of a Fourth Amendment violation must be excluded as fruit of the poisonous tree." *State v. Oliver*, 293 S.W.3d 437, 442 (Mo. banc 2009) (quoting *State v. Miller*, 894 S.W.2d 649, 654 (Mo. banc 1995)). There are exceptions to this rule, however, one of which is the inevitable discovery doctrine. "The inevitable discovery doctrine . . . provides that evidence may be admissible, despite a constitutionally invalid search, if law enforcement personnel would have ultimately or inevitably discovered the evidence." *Id.* at 443. "To show that the evidence would have inevitably been discovered, the state must prove by a preponderance of the evidence: '(1) that certain standard, proper and predictable procedures of the local police department would have been utilized and (2) those procedures inevitably would have led to discovery of the challenged evidence . . . .'" *Id.* (quoting *State v. Rutter*, 93 S.W.3d 714, 726 (Mo. banc 2002)).

The evidence in the record abjectly fails to sustain the State's burden to establish application of the inevitable discovery doctrine exception to the warrantless search of O'Connor's purse. During the suppression hearing, Officer J. L. testified that although he believed the vehicle was towed from the bank parking lot, he could not recall that specifically, as he would not have been the officer handling those details. Officer J. L. offered no testimony whatsoever about standard, proper, and predictable procedures of the local police department that would have been utilized had the vehicle been towed, or that those procedures would have led to the inevitable search of the contents of O'Connor's purse. At the conclusion of the suppression hearing, the State did not argue that police procedures would have led to the inevitable discovery of the contents of O'Connor's purse, and instead argued that "[t]hat car was searched and would have been inventory searched after the towing anyway--or before the towing because every towing company makes sure that that happens so it's not on the hook for anything that's inside the car. So we have an inevitable discovery argument." O'Connor argued in response that Officer J. L. did not even know what happened to the vehicle, and that there was no evidence of what would have happened even had Officer J. L. handled the decision about whether to tow the vehicle. O'Connor also pointed out that "[t]here's no evidence of what the tow companies would usually do." In post-hearing briefing, the State argued that "Officer [J. L.] testified that as both parties were arrested and the car was to be towed off the private parking lot, the contents of the car would have been inventoried per Jefferson City Police Department procedure," even though there was absolutely no evidence to this

30

effect offered at all during the suppression hearing, let alone through the testimony of Officer J. L.

The evidentiary record did not improve for the State at trial where no evidence was introduced through the testimony of Officer J. L. or otherwise to satisfy the standard for application of the inevitable discovery doctrine to this case.  It is thus of no surprise that although O'Connor necessarily addresses the inevitable discovery doctrine in her point on appeal, the State's brief ignores the issue all together, effectively abandoning the alternative argument it advanced during the suppression hearing, and as to which it bears the burden of proof.  For the reasons explained above, we conclude that the State has not sustained its burden to establish by a preponderance of the evidence that the inevitable discovery doctrine applies to excuse the warrantless search of O'Connor's purse.

### *The Search of O'Connor's Purse Was Not Pursuant to Probable Cause*

That does not end our analysis, however, as the State has argued in its brief that even if the search of O'Connor's purse was not based on valid consent, the officers had probable cause to search the car and its contents.  The State relies on *California v. Acevedo*, 500 U.S. 565, 580 (1991), to argue that "[t]he police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained."  "Under the automobile exception to the warrant requirement, police may search a vehicle and seize contraband found if there is probable cause to believe that the vehicle contains contraband and exigent circumstances necessitate the search." *State v. Middleton*, 995 S.W.2d 443, 458 (Mo. banc 1999).  The State then summarily contends that Officer J. L. and the second officer "had probable cause to

31

believe that drugs were in the car or any container located in the car" because O'Connor and the male passenger were found disrobed and asleep in a vehicle in a bank parking lot and O'Connor told police she had used drugs hours before their arrival on the scene. [Respondent's Brief, p. 22]

The State had the burden of proof and persuasion to show by a preponderance of the evidence that the motion to suppress should be denied, and that evidence seized from the warrantless search of O'Connor's purse should not be excluded at trial. Yet, the State did not argue during the suppression hearing or at trial that the search of the vehicle, and ultimately of O'Connor's purse, was based on probable cause pursuant to the "automobile exception" to a warrantless search. In fact, and to the contrary, during the suppression hearing, Officer J. L. testified that the only "reason [he] searched the vehicle was based on the driver's consent." Officer J. L. repeated the same testimony at trial, leaving no doubt that from the officers' perspective, the consent provided by the male passenger provided the exclusive authority for the warrantless search of the vehicle and of O'Connor's purse.

Even assuming that the State, which prevailed on the motion to suppress, has the ability to raise for the first time on appeal a previously unasserted exception that could authorize the warrantless search of O'Connor's purse (a question we need not decide), no evidentiary record was developed by the State to support a conclusion that Officer J. L. and the second officer were searching the vehicle based on probable cause to believe there were drugs in the vehicle. "In an automobile context, probable cause to search exists 'when the facts and circumstances would lead a reasonably prudent [person] to

32

believe that the vehicle contains contraband.'" *State v. Milliorn*, 794 S.W.2d 181, 183

(Mo. banc 1990) (quoting *United States v. Clark*, 559 F.2d 420, 424 (5th Cir. 1977)).

Being found asleep in a car, in a disrobed state, is not a sufficient fact or circumstances to

lead a reasonably prudent person to believe that the vehicle contains contraband, even if

one of the passengers in the vehicle non-specifically states that she used drugs "hours

earlier." No evidence was elicited from Officer J. L. that he or the second officer

detected the odor of drugs; saw any evidence of drug activity in plain view in the vehicle;

observed that either O'Connor or the male passenger were acting impaired; or heard the

male passenger or O'Connor admit to drug use *in the vehicle*. No evidence was elicited

during the suppression hearing or at trial to explain the nature of O'Connor's prior

outstanding warrant or to explain why the male passenger was arrested. No evidence was

elicited during the suppression hearing to suggest that either O'Connor or the male

passenger were uncooperative or combative, or were acting suspiciously or

surreptitiously as if attempting to secret incriminating evidence in the vehicle.

There is simply no evidence in this record to support attributing merit to the State's

delinquent assertion of the "automobile exception" to justify Officer J. L.'s warrantless

search of O'Connor's purse. Instead, we find, just as Officer J. L. testified, that the

warrantless search of the vehicle and of O'Connor's purse was conducted based solely on

the consent to search extended by the male passenger. *See James*, 645 N.E.2d at 201

(holding that where officer "never testified that he believed that he had probable cause to

search the car or the purse," and where "record offer[ed] only one reason," the driver's

consent, for the officer's search of the vehicle, then "State must find refuge in [the

33

driver's] *consent* to the officer's search of the vehicle," and not in probable cause to search.). We have already explained that the State cannot find refuge in its reliance on the male passenger's consent to justify the warrantless search of O'Connor's purse.

### *The Evidence Obtained as a Direct Result of the Warrantless Search of O'Connor's Purse Should Have Been Suppressed by Operation of the Exclusionary Rule*

The contents of O'Connor's purse and O'Connor's statements to Officer J. L. following his immediate inquiry of O'Connor about the seized contents of her purse were obtained in violation of the Fourth Amendment. *See State v. Miller*, 894 S.W.2d 649, 656-57 (Mo. banc 1995) (finding statements made after unlawful search to be the fruits of the unlawful search). The United States Supreme Court created the exclusionary rule to "'compel respect for the constitutional guaranty'" assured by the Fourth Amendment. *State v. Robinson*, 534 S.W.3d 279, 286-87 (Mo. App. W.D. 2017) (quoting *Davis v. United States*, 564 U.S. 229, 236 (2011)). The State nonetheless argues that the exclusionary rule should not apply here because "[a]t most, this case involved simple, isolated negligence." [Respondent's Brief, p. 24] We disagree.

Officer J. L.'s search of the contents of O'Connor's purse was not negligent or unintentional. It was a deliberate choice. Officer J. L. deliberately searched O'Connor's purse even though he knew the purse belonged to O'Connor, and even though no evidence establishes that O'Connor was aware that the male passenger consented to a search of the vehicle. Once Officer J. L. began searching the passenger area of the vehicle, he could easily have attempted to secure O'Connor's consent to search her purse. He did not do so, and instead elected to disregard O'Connor's reasonable expectation of

34

privacy in her purse despite having no objectively reasonable basis to believe that the male passenger had shared authority or control over the purse. As such, we conclude that exclusion of the invalidly obtained evidence is appropriate here because the deterrent benefits of suppression outweigh the heavy cost of excluding evidence of a crime. *See Davis*, 564 U.S. at 237; *State v. Pierce*, 548 S.W.3d 900, 903 (Mo. banc 2018).

The trial court committed clear error when it overruled O'Connor's motion to suppress, and abused its discretion when it admitted at trial over O'Connor's objection, the contents seized from O'Connor's purse and the statements O'Connor made about the unlawfully seized contents from her purse. The exclusion of this evidence leaves no evidence in the trial record sufficient to support O'Connor's conviction of possession of a controlled substance pursuant to section 579.015, requiring reversal of the Judgment of conviction and sentence.

Point one on appeal is granted.

### Conclusion

The trial court's Judgment of conviction and sentence is reversed.


_____
Cynthia L. Martin, Judge

All concur

35